STATE of Wisconsin, Petitioner-Appellant,

v.

William CARPENTER, Respondent-Respondent. [Case No. 94–1898.]

STATE of Wisconsin, Petitioner-Appellant,

v.

William A. SCHMIDT, Respondent-Respondent. [Case No. 94–2024.]

Supreme Court

*Oral argument September 5, 1995.—Decided December 8, 1995.*

(Also reported in 541 N.W.2d 105.)

94-1898: For the petitioner-appellant the cause was argued by *Sally L. Wellman*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

For the respondent-respondent there were briefs by *Bill Ginsberg, Rick B. Meier* and *Mandell & Ginsberg Law Offices*, Madison and oral argument by *Bill Ginsberg*.

Amicus curiae brief was filed by *Christopher L. Wolle*, Madison for State Representatives David Prosser, Jr. and Lolita Schneiders.

Amicus curiae brief was filed (in the court of appeals) by *Jeffrey J. Kassel* and *LaFollette & Sinykin*, Madison for the American Civil Liberties Union of Wisconsin Foundation.

Amicus curiae brief was filed (in the court of appeals) by *Herbert S. Bratt and John D. Schrager*, Milwaukee for the Wisconsin Psychiatric Assocation, Inc.

Amicus curiae brief was filed (in the court of appeals) by *Dianne Greenley*, Madison for the Wisconsin Coalition for Advocacy, Inc.

94-2024:

For the petitioner-appellant the cause was argued by *Sally L. Wellman*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

For the respondent-respondent there was a brief and oral argument by *Daniel M. Berkos*, Mauston.

ANN WALSH BRADLEY, J.   These cases are before the court on certification by the court of appeals from orders of the Circuit Court for Dane County, Mark A. Frankel, Judge, and the Circuit Court for Sauk County, James Evenson, Judge, holding Wisconsin's Sexually Violent Person Commitments statute, Wis. Stat. ch. 980 (1993-94)[1] unconstitutional. The respondents in these cases and the companion cases[2] decided today argue that ch. 980 violates the Equal Protection, Due Process, Double Jeopardy, and Ex Post Facto Clauses of the Wisconsin and United States Constitutions. We conclude in this opinion that ch. 980 creates a civil commitment procedure primarily intended to protect the public and to provide concentrated treatment to convicted sexually violent persons, not to punish the sexual offender. Therefore, we hold that ch. 980 does

---

[1] All future statutory references are to the 1993-94 volume unless otherwise indicated.

[2] *See State v. Post*, 197 Wis. 2d 279, 541 N.W.2d 115 (1995).

not violate either the Ex Post Facto or the Double Jeopardy Clause. Accordingly, we reverse the trial courts' orders determining that ch. 980 is unconstitutional on these grounds and remand for further proceedings consistent with ch. 980. We also affirm the trial court's order in *Carpenter* finding probable cause that he is a sexually violent person.

This opinion is limited to the question of whether ch. 980 violates the Double Jeopardy or Ex Post Facto Clauses of the Wisconsin and United States Constitutions. Our determination of the due process and equal protection issues is set forth in the companion cases. *See State v. Post*, 197 Wis. 2d 279, 541 N.W.2d 115 (1995).

We begin with a brief overview of the statute.[3] Chapter 980 provides for the involuntary commitment of certain individuals who are found to be sexually violent persons. Section 980.01(7) defines a "sexually violent person" in part as "a person who has been convicted of a sexually violent offense . . . and who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence."

When a petition is filed alleging that a person is sexually violent, the court must review the petition to determine whether to issue an order detaining the person and must hold a hearing to determine whether there is probable cause to believe that the person named in the petition is sexually violent. Wis. Stat. § 980.04. If a court or jury determines that the person is sexually violent as defined by the statute, the person is committed to the Department of Health and Social

---

[3] A comprehensive analysis of the requirements and procedures of Wis. Stat. ch. 980 is set forth in the companion cases, *supra* note 2.

Services (DHSS) "for control, care and treatment until such time as the person is no longer a sexually violent person." Wis. Stat. § 980.06.

## I. BACKGROUND

The facts and procedural history in both cases are undisputed. We will address each in turn.

### A. *State v. Carpenter*

Carpenter was convicted of first-degree sexual assault of a seven-year-old in 1984 and was sentenced to 12 years in prison. The court stayed the sentence and placed him on probation for 10 years. His probation was initially revoked in 1986 for engaging in sexual intercourse with his 14-year-old daughter. The revocation was vacated but reinstated in 1988 based on an allegation that he violated parole by associating with minors.

Carpenter was paroled in 1993 and out on parole for nine months before being reincarcerated based on the Department of Corrections' (DOC) recalculation of his mandatory release date pursuant to *State ex rel. Parker v. Fiedler*, 180 Wis. 2d 438, 509 N.W.2d 440 (Ct. App. 1993), *rev'd, State ex rel. Parker v. Sullivan*, 184 Wis. 2d 668, 517 N.W.2d 449 (1994). Although this court overturned the court of appeals' decision in *Parker* and provided that the prisoners detained pursuant to that decision be released by July 15, 1994, Carpenter was not released.

Instead, on July 14, 1994, the State filed a petition against Carpenter pursuant to Wis. Stat. § 980.02(1)(b), alleging that he is a sexually violent person. The petition also summarized the opinions of Dr. Lawrence Kane, who concluded that Carpenter suffers from pedophilia and an antisocial personality

disorder. Kane opined that there is a substantial probability that Carpenter will engage in future acts of sexual violence.

Carpenter filed a motion challenging the constitutionality of ch. 980 on the grounds of due process, equal protection, vagueness, ex post facto, and double jeopardy. He also attacked the factual basis for the petition. The trial court held that ch. 980 was unconstitutional because it violated the Ex Post Facto, Double Jeopardy, and Substantive Due Process Clauses of the Wisconsin and Federal Constitutions and therefore did not reach Carpenter's factual challenge to the petition.

The State requested and received a stay pending appeal of the trial court's order holding the statute unconstitutional and releasing Carpenter from custody. In the meantime, the court of appeals granted Carpenter's motion to remand for a probable cause hearing, after which the trial court found probable cause to find that Carpenter is a sexually violent person pursuant to § 980.01(7). Carpenter appeals this order, arguing that probable cause was lacking because he was not within 90 days of discharge or release as required by Wis. Stat. § 980.02(2)(ag), and asserting that the petition was deficient because the State failed to allege an overt act.[4]

### B. *State v. Schmidt*

In March 1992, Schmidt was convicted of two counts of fourth-degree sexual assault and placed on probation for three years as a result of having sexual intercourse with his 14-year-old girlfriend. That proba-

---

[4] In granting Carpenter's motion to remand, the court of appeals expressly allowed him the right to appeal any issue arising from the probable cause hearing within the scope of the State's appeal.

tion was subsequently revoked. In late 1992, he was convicted of two counts of first-degree sexual assault and sentenced to three years in prison as a result of digitally penetrating the anus of his two-year-old nephew.

The State filed a petition against him pursuant to Wis. Stat. § 980.02(1)(a). In addition to the sexual assaults for which Schmidt was incarcerated, the petition alleged that Schmidt was found to have engaged in penis-to-anus penetration of a five-year-old boy in 1985 and that he had not successfully completed a sex offender treatment program offered while in prison. The petition also summarized the opinion of Dr. Ken Lerner, who diagnosed Schmidt as suffering from the mental disorder, pedophilia. Lerner concluded that Schmidt was dangerous to others because he suffered from a mental disorder that makes it substantially probable that he would engage in acts of sexual violence.

The trial court subsequently found probable cause to believe that Schmidt is a sexually violent person pursuant to § 980.01(7). Schmidt then filed motions challenging the constitutionality of the statute. The court granted Schmidt's motion to dismiss on the grounds that the statute violated both the Double Jeopardy and the Ex Post Facto Clauses of the United States Constitution. The State sought and obtained from the court of appeals a stay of Schmidt's release pending appeal.

## II.  DOUBLE JEOPARDY

Both the United States and Wisconsin Constitutions protect criminal defendants from being subjected

to double jeopardy.[5] Because these provisions are the same in scope and purpose, we have routinely followed decisions of the United States Supreme Court as governing the double jeopardy provisions of both constitutions. *State v. Killebrew*, 115 Wis. 2d 243, 246 n.2, 340 N.W.2d 470 (1983).

The United States Supreme Court has recognized that "the Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *United States v. Halper*, 490 U.S. 435, 440 (1989). Respondents argue that ch. 980 subjects them to multiple punishment for the same underlying sexual offense.

A party challenging the statute must show it to be unconstitutional beyond a reasonable doubt. *State v. Iglesias*, 185 Wis. 2d 117, 133, 517 N.W.2d 175 (1994), *cert. denied*, 115 S. Ct. 641 (1994). In doing so, the challenging party must overcome the presumption that the statute is constitutional, which we have summarized as follows:

> Every presumption must be indulged to sustain the law if at all possible and, wherever doubt exists as to a legislative enactment's constitutionality, it must be resolved in favor of constitutionality. The

---

[5] The Federal Constitution's Double Jeopardy Clause provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ." U.S. Const. amend. V. Wisconsin's analogous provision states: "[N]o person for the same offense may be put twice in jeopardy of punishment . . . ." Wis. Const. art. I, § 8(1).

> court cannot reweigh the facts found by the legisla-
> ture. If the court can conceive any facts on which the
> legislation could reasonably be based, it must hold
> the legislation constitutional.

*State v. McManus*, 152 Wis. 2d 113, 129, 447 N.W.2d 654 (1989) (citations and quotations omitted). There- fore, respondents bear the burden of overcoming the strong presumption that ch. 980 does not subject a person to multiple punishment.

In determining whether a sanction constitutes punishment for the purposes of double jeopardy, we must assess "the purposes actually served by the [stat- ute], not the underlying nature of the proceeding giving rise to the sanction . . . ." *Halper*, 490 U.S. at 447 n.7. We consider whether the statutory scheme is so puni- tive either in purpose or effect as to negate the legislature's remedial purpose. *See United States v. Ward*, 448 U.S. 242, 248 (1980).

"Governmental action is punishment under the double jeopardy clause if its principal purpose is pun- ishment, retribution or deterrence. When the principal purpose is nonpunitive, the fact that a punitive motive may also be present does not make the action punish- ment." *Killebrew*, 115 Wis. 2d at 251. Therefore, a civil sanction is violative of the Double Jeopardy Clause if it "may not fairly be characterized as remedial, but only as a deterrent or retribution."[6] *Halper*, 490 U.S. at 448- 49.

---

[6] In an effort to find ch. 980 violative of the Double Jeopardy Clause, the dissent improperly relies on the following language in *Halper* to set forth a stricter standard: "[A] civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as also serving either retributive or

Respondents argue that despite the legislature's effort to create a "civil" or "remedial" statute, ch. 980 is so punitive in its effect that it negates the State's inten-

deterrent purposes, is punishment . . . ." *Halper*, 490 U.S. at 448 (emphasis added). *Post, supra* note 2, Dissent at 197 Wis. 2d 279, 341. To the extent the dissent is suggesting that a civil sanction containing any punitive purpose is punishment, it is erroneous. *Halper* unequivocally limited its holding as follows:

> We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but *only* as a deterrent or retribution.

*Id.* at 448-49 (emphasis added). Curiously, while the dissent relies on the *Halper* language that a civil sanction must be solely remedial to survive double jeopardy scrutiny, it recognizes as correct our contrary holding in *State v. Killebrew*, 115 Wis. 2d 243, 251, 340 N.W.2d 470 (1983) (the fact that a punitive motive may also be present does not make an action punishment). *Post* Dissent at 338 (quoting *Killebrew*, 115 Wis. 2d at 251).

We further note that the Supreme Court has since reaffirmed the strict holding of *Halper*. The Court in *Department of Revenue v. Kurth Ranch*, 114 S. Ct. 1937, 1946-47 (1994), ruling on the constitutionality of a drug tax, recognized that the existence of punishment aspects in a statute does not necessarily make it punishment. The Court stated:

> We begin by noting that neither a high rate of taxation nor an obvious deterrent purpose automatically marks this tax a form of punishment . . . . [W]hile a high tax rate and deterrent purpose lend support to the characterization of the drug tax as punishment, these features, in and of themselves, do not necessarily render the tax punitive.

*Id. See also State v. McMaster*, No. 95-1159-CR (Wis. Ct. App. Nov. 8, 1995) (holding that a sanction that primarily serves a nonpunitive goal but has a secondary deterrent purpose may be properly characterized as remedial).

tion. They acknowledge that treatment is a component of ch. 980, but contend that it is merely a pretense and secondary in purpose to punishment. We disagree. The emphasis on treatment in ch. 980 is evident from its plain language. For example, the notice provision in Wis. Stat. § 980.015(3)(b)[7] requires the agency with jurisdiction over the person to provide the appropriate district attorney and the Department of Justice with documentation of any prior treatment that the subject received while in prison. Under Wis. Stat. § 980.06(1), a person found to be sexually violent is committed to the custody of DHSS for control, care, and treatment, as opposed to the DOC for imprisonment. Further, DHSS is required to "arrange for control, care and treatment of the person in the least restrictive manner consistent with the requirements of the person . . . ." Wis. Stat. § 980.06(2)(b).

When determining whether commitment is to a secure mental health facility or supervised release, § 980.06(2)(b)[8] directs the court to consider what arrangements are available to ensure that the person

---

[7] Wisconsin Stat. § 980.015(3)(b) states:

(3) The agency with jurisdiction shall provide the district attorney and department of justice with all of the following:

. . . .

(b) If applicable, documentation of any treatment and the person's adjustment to any institutional placement.

[8] Wisconsin Stat. § 980.06(2)(b) states in relevant part:

In determining whether commitment shall be for institutional care in a secure mental health unit or facility or other facility or for supervised release, the court may consider, without limitation because of enumeration, the nature and circumstances of the behavior that was the basis of the allegation in the petition under s. 980.02(2)(a), the person's mental history and present mental condition, where the person will live, how the person will support himself or herself, and what arrangements are available to ensure

has access to and will participate in necessary treatment. Further, if the court finds supervised release to be appropriate, Wis. Stat. § 980.06(2)(c)[9] requires the county where the person resides to prepare a plan that identifies the treatment that the person will receive in the community and must specify who will be responsible for providing the treatment identified in the plan. These provisions lead us to conclude that the statute is aimed primarily at treating the sexually violent person, not punishing the individual.

In addition to the explicit language pertaining to treatment within the statute, the undisputed record in this case indicates that the State is prepared to provide specific treatment to those committed under ch. 980 and not simply warehouse them, as suggested by respondents. All persons committed under ch. 980 who are not immediately placed on supervised release are placed at the Wisconsin Resource Center, a mental health facility run by DHSS that contracts with DOC to provide mental health services to inmates. The committed persons are not part of the general inmate population and are not staffed by prison guards but by psychiatric care technicians, psychologists and clinical

---

that the person has access to and will participate in necessary treatment.

[9] Wisconsin Stat. § 980.06(2)(c) states in relevant part:

If the court finds that the person is appropriate for supervised release, the court shall notify the department. The department and the county department under s. 51.42 in the county of residence of the person shall prepare a plan that identifies the treatment and services, if any, that the person will receive in the community. The plan shall address the person's need, if any, for supervision, counseling, medication, community support services, residential services, vocational services, and alcohol or other drug abuse treatment. . . . The plan shall specify who will be responsible for providing the treatment and services identified in the plan.

nurses. They receive more intensive treatment than that provided to prison inmates. As the population increases, plans exist to increase the staff proportionately.

Respondents rely heavily on the fact that those committed under ch. 980 face an indefinite period of confinement in a secure facility as evidence that the true intent of the statute is punishment. However, ch. 980 expressly provides for supervised release either at the time of commitment, Wis. Stat. § 980.06(2)(b) and (c), or upon the person's subsequent petition after receiving treatment, Wis. Stat. § 980.08(4). Further, the person is entitled to discharge as soon as his or her dangerousness or mental disorder abates. *See* Wis. Stat. § 980.09.

We conclude that these provisions significantly detract from respondents' argument that the statute's primary purpose is punishment. Schmidt's counsel conceded in arguments to this court that the supervised release provisions "certainly" took some of the onus away from the notion of punishment. However, counsel viewed this as an "afterthought" and argued that the legislature merely included such nonpunitive components "to make it appear more palatable from a constitutional sense."[10]

---

[10] Schmidt's counsel was questioned in relevant part:

Q. The point is that people are able to get out on supervised release. Doesn't that take some of the onus away from the punishment . . . ?

A. It certainly does. However, the way I view that is . . . an afterthought or some sort of protective measure that was thrown in there to make it appear more palatable from a constitutional sense . . .

We decline to engage in such speculation. We are mindful of the heavy presumption in favor of constitutionality that must be afforded statutes:

> Judicial inquiries into [legislative] motives are at best a hazardous matter, and when that inquiry seeks to go behind objective manifestations it becomes a dubious affair indeed. . . . "[I]t is not on slight implication and vague conjecture that the legislature is to be pronounced to have transcended its powers, and its acts to be considered as void."

*Flemming v. Nestor*, 363 U.S. 603, 617 (1960) (quoted source omitted).

Our task is not to search for sinister ulterior motives underlying the legislature's acts in order to find statutes unconstitutional.[11] Rather, we look to the

---

[11] The dissent argues that the majority misconstrues U.S. Supreme Court precedent in determining that ch. 980 passes constitutional muster by "ignoring its legislative history . . . ." *Post* Dissent at 197 Wis. 2d 279, 338, 541 N.W.2d 115 (1995). The dissent relies heavily on legislative history to conclude that ch. 980 is unconstitutional. *Post* Dissent at 342-346. In doing so, the dissent infers that the majority erred in not considering legislative history to glean its principal purpose.

While we agree that legislative history may shed light on a statute's purpose in certain instances, we disagree with the dissent's reliance on selected statements made by a few officials to indicate that the legislature intended to enact a punitive statute. Selected statements, even those made by the sponsor of the legislation, that reflect a punitive motivation for the statute are not sufficient to overcome the presumption of constitutionality which attends the statute. *Wiley v. Bowen*, 824 F.2d 1120, 1122 (D.C. Cir. 1987). In judging the constitutionality of a statute, we cannot assume that the statements of a few constitute the motivation of the entire legislature. "[W]e are left with the

plain language of the statute as evidence of the legislature's intent.

Respondents argue that various provisions in ch. 980 provide evidence of the legislature's punitive intent. We are persuaded that the principles underlying the Supreme Court's decision in *Allen v. Illinois*, 478 U.S. 364 (1986), apply in this case to effectively refute respondents' arguments that various other parts of ch. 980 support the notion that its primary purpose is criminal punishment.

For example, respondents assert that ch. 980 is punitive because it employs procedural safeguards typically reserved for criminal matters. These include the right to a twelve-person jury, the right to counsel, the right against self-incrimination, and proof beyond a reasonable doubt. Respondents also point to the fact that the statute is located within the criminal code as further evidence of the legislature's punitive intent. However, as the Supreme Court concluded in *Allen*, the legislature's decision "to provide some of the safeguards applicable in criminal trials cannot itself turn these proceedings into criminal prosecutions." *Id.* at 372.

Respondents point to the fact that ch. 980 applies only to those already convicted of a crime. We agree with *Allen* that simply because "the State has chosen not to apply [ch. 980] to the larger class of mentally ill persons who might be found sexually dangerous does not somehow transform a civil proceeding into a criminal one." *Id.* at 370.

---

rule that 'only the clearest proof could suffice to establish the unconstitutionality of a statute' on the ground 'that a punitive purpose in fact lay behind the statute.' " *Id.*, quoting *Flemming v. Nestor*, 363 U.S. 603, 617 (1960).

In *Allen*, the Supreme Court held that an Illinois statute which provided for civil commitment of sexually dangerous persons was properly categorized as civil, not criminal. *Id.* at 369. In holding the statute civil, the Court deemed significant many of the same factors that we have relied on, such as the fact that the state was obligated to provide treatment designed to effect recovery for those committed, conditional release was available, and committed persons were discharged when no longer dangerous. *Id.* at 369.

We acknowledge that *Allen* is distinguishable from the present case because the Illinois statute at issue in *Allen* provides for commitment in lieu of serving a criminal sentence. While this is a distinguishing factor, we do not deem it to be fatal.

We are unpersuaded that the indicia of punishment in ch. 980 identified by respondents is so punitive in purpose or effect as to negate the statute's remedial purpose and transform the State's intent to treat into an intent to punish. *Ward*, 448 U.S. at 248. As we have already stated, the relevant inquiry is directed towards the principal purposes served by the sanction, not the underlying nature of the proceedings giving rise to the sanction. *Halper*, 490 U.S. at 447 n.7.

We conclude that the principal purposes of ch. 980 are the protection of the public and the treatment of convicted sex offenders who are at a high risk to reoffend in order to reduce the likelihood that they will engage in such conduct in the future. These constitute significant nonpunitive and remedial purposes. Chapter 980 cannot be characterized as only serving the punishment goals of deterrence or retribution. *See Halper*, 490 U.S. at 448-49. It is undeniable that the statute is penal to a certain degree in that it potentially

subjects individuals to an affirmative restraint. However, where the principal purpose of a civil sanction is nonpunitive, the fact that a punitive motive may also be present does not make the action punishment. *Killebrew*, 115 Wis. 2d at 251.

Respondents have failed to show that the principal purpose of the statute is punishment, retribution, or deterrence so as to render it punishment. Further, respondents have failed to show that the statute has sufficient punitive characteristics and insufficient civil commitment characteristics such that it has ceased to be a civil commitment and has become punishment. Accordingly, respondents have failed to meet their burden to overcome the strong presumption in favor of constitutionality.

## III.  EX POST FACTO

The United States and Wisconsin Constitutions prohibit ex post facto laws.[12] It is well established that the constitutional prohibition on ex post facto laws applies only to penal statutes. *Collins v. Youngblood*, 497 U.S. 37, 41 (1990); *Wisconsin Bingo Supply & Equip. Co. v. Bingo Control Board*, 88 Wis. 2d 293, 305, 276 N.W.2d 716 (1979). In construing the Ex Post Facto Clause of the Wisconsin Constitution, we look to the United States Supreme Court decisions construing the Ex Post Facto Clause of the Federal Constitution. *State v. Thiel*, 188 Wis. 2d 695, 699, 524 N.W.2d 641 (1994).

We recently determined in *Thiel* that the Supreme Court's decision in *Collins*, 497 U.S. at 42, provides the

___

[12] *See* United States Const. art. I, § 9, cl. 3 and § 10, cl. 1; Wis. Const. art. I, § 12.

proper analysis applicable to Wisconsin's Ex Post Facto Clause. *See Thiel*, 188 Wis. 2d at 703. An ex post facto law is any law " 'which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed . . . .' " *Id.*, quoting *Collins*, 497 U.S. at 42. Respondents specifically argue that ch. 980 makes more burdensome the punishment for their past sexual offenses.

We have repeatedly stated the test of what constitutes punishment in the context of determining whether a law is an ex post facto law as follows:

> The question in each case where unpleasant consequences are brought to bear upon an individual for prior conduct, is whether the legislative aim was to punish that individual for past activity, or whether the restriction of the individual comes about as a relevant incident to a regulation of a present situation . . . .

*See, e.g., Thiel*, 188 Wis. 2d at 704, quoting *Wisconsin Bingo Supply*, 88 Wis. 2d at 305, quoting *DeVeau v. Braisted*, 363 U.S. 144, 160 (1960) (plurality opinion). Therefore, we must consider the language and structure of the statute to determine whether it serves a legitimate regulatory public purpose apart from punishment for the predicate act.

For the same reasons mentioned above with respect to our double jeopardy analysis, we conclude that ch. 980 is aimed at protecting the public by providing concentrated treatment for convicted sex offenders who are at a high risk to reoffend based upon a mental

disorder which predisposes them to commit acts of sexual violence. The focus of the statute is on the offender's current mental condition and the present danger to the public, not punishment. As we recognized in *Thiel*, the mere fact that a prior conviction is a predicate of the current sanction does not render the current sanction punishment for the past offense. *Thiel*, 188 Wis. 2d at 703-05. The legislative aim is not punishment but regulation of a present situation.

Where a statute serves a legitimate, regulatory, nonpunitive purpose, it only violates the Ex Post Facto Clause if the regulatory sanction "bears no rational connection to the purposes of the legislation . . . ." *See Flemming*, 363 U.S. at 617. Here, there clearly is a rational connection between the restriction on the sexually violent person's liberty and the statute's purpose of protecting the public from dangerous sex offenders by providing treatment for those offenders in order to reduce the likelihood they will engage in such acts in the future.

We conclude that ch. 980 was not enacted to punish convicted sex offenders but rather to protect public safety and treat sexually violent persons. The restriction on such persons comes about incident to a regulation of a present situation. Accordingly, we hold that ch. 980 is not an ex post facto law.

## IV.   PROBABLE CAUSE DETERMINATION

In order to be a proper subject of a ch. 980 petition, a person must be "within 90 days of discharge or release, on parole or otherwise, from a sentence that was imposed for a conviction for a sexually violent

offense[,] from a secured correctional facility . . . ." § 980.02(2)(ag). Whether this requirement was met in Carpenter's case requires us to interpret and apply § 980.02(2)(ag) to an undisputed set of facts. These are questions of law that we review de novo. *See Swatek v. County of Dane*, 192 Wis. 2d 47, 57, 531 N.W.2d 45 (1995).

Carpenter does not dispute that DOC had the authority to reincarcerate him in January 1994 based on the court of appeals' *Parker* decision. Rather, he contends that because this court ultimately reversed the court of appeals, his original June 1993 release date is the date that applies in relation to the 90-day requirement in § 980.02(2)(ag). We do not read the statute so narrowly. Upon reincarcerating Carpenter, DOC recalculated a new parole date based on his conviction for a sexually violent offense. At the time the petition was initiated, therefore, Carpenter was within 90 days of discharge from imprisonment based on that sentence. The fact that this court ultimately reversed the court of appeals' decision does not render the DOC action "illegal."

Carpenter also argues that there was no probable cause because the State failed to allege an overt act. Carpenter contends that the State must establish an overt act in order to establish probable cause of dangerousness because he had been released from custody prior to the filing of the petition. *See In re Young*, 857 P.2d 989, 1009 (Wash. 1993) (holding that for non-incarcerated individuals, a sex predator petition must include an allegation for a recent overt act), *rev'd, Young v. Weston*, No. C94-480C, 1995 WL 529429 (W.D. Wash. Aug. 25, 1995). We disagree. Carpenter's

reliance on *Young* is misplaced because, unlike the defendant in *Young*, Carpenter was incarcerated when the petition was filed. Therefore, we affirm the trial court's order finding probable cause.

## V. CONCLUSION

Respondents carry a heavy burden when making a constitutional challenge to a statute because we must afford the statute a strong presumption in favor of constitutionality. *Thiel*, 188 Wis. 2d at 706. They must prove beyond a reasonable doubt that the legislature's intent in enacting ch. 980 was to punish sexually violent persons. *See id.*; *see also Iglesias*, 185 Wis. 2d at 133. Based upon our above discussion, we conclude that respondents have not met their burden.

Federalism dictates that states may develop a variety of solutions to problems with varying standards and procedures provided that they meet the constitutional minimum. *Addington v. Texas*, 441 U.S. 418, 431 (1979). The legislature in enacting ch. 980 has attempted to deal with the legitimate public concern over the danger posed by sexually violent persons. We conclude that this method chosen by the legislature was not enacted to punish convicted felons but rather to protect the public and to provide treatment to convicted sexually violent persons.

*By the Court.*—In *State v. Carpenter*, orders affirmed in part, reversed in part and cause remanded. In *State v. Schmidt*, order reversed and cause remanded.

WILLIAM A. BABLITCH, J. (*concurring*). I join the majority opinion in both its reasoning and result. I

write only to address what I perceive to be a fundamental flaw in the analysis contained in the dissent.

The fundamental flaw in the dissent is that it confuses "ends" with "means," and thereby concludes its analysis at a point where it should begin. The dissent states that the purpose (i.e. ends) of the legislation in question is punishment, "namely the ongoing incarceration of convicted sex offenders who might otherwise be released." Dissent at 346. That so-called purpose is, I submit, the means to the end. The underlying purpose of the sexual predator legislation is protection of the public and the treatment of convicted sex offenders who are at a high risk to reoffend. The means used to accomplish this underlying purpose is affirmative restraint with a strong component of treatment. As stated in *United States v. Halper*, 490 U.S. 435 (1989), for purposes of ex post facto and double jeopardy analysis, we must assess "the purposes actually served by the [statute] in question, not the underlying nature of the proceeding giving rise to the sanction . . . ." *Id.* at 447, n. 7.

The dissent addresses the legislative history of the passage of this legislation to buttress its conclusion that the purpose is incarceration. But again, the analysis is flawed for the same reason stated above. One can scarcely expect silence from the legislature and the governor with respect to how they intend to accomplish their underlying purpose of public protection against further offenses. A close examination of the quotes contained in the dissent show that these statements are nothing more than just that.

The dissent's analysis is much akin to saying that a person goes to his or her car in the morning for the purpose of taking a ride. That is correct as far as it goes—but not when it can be demonstrated that the

underlying purpose of going to the car is to get to the office.

The underlying purpose here is public protection. The means chosen to accomplish that purpose is affirmative restraint with a strong component of treatment. The majority opinion amply and persuasively demonstrates a rational connection between the affirmative restraint and treatment required by the statute and its purpose of protecting the public. *See Fleming v. Nestor*, 363 U.S. 603, 617 (1960). Accordingly, a challenge based on ex post facto and double jeopardy considerations must fail.

SHIRLEY S. ABRAHAMSON, J. (*dissenting*). I dissent for the reasons set forth in *State v. Post*, 197 Wis. 2d 279, 541 N.W.2d 115 (1995), of even date.