In re the Commitment of Daniel Arends:
State of Wisconsin, Petitioner-Respondent,†

v.

Daniel Arends, Respondent-Appellant.

Court of Appeals

*No. 2008AP52. Submitted on briefs September 19, 2008.
—Decided November 19, 2008.*

2008 WI App 184

(Also reported in 762 N.W.2d 422.)

† Petition to review granted 2/10/09.

■■■■■■■■■■

■■■■■■■■■

■■■■■■■■■■■■■■

■■■■■■■■■■

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Len Kachinsky* of *Sisson and Kachinsky Law Offices*, Appleton.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Christine Remington*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Brown, C.J., Snyder and Neubauer, JJ.

¶ 1. SNYDER, J. Daniel Arends appeals from an order denying his petition for discharge from his WIS. STAT. ch. 980 (2005–06)[1] commitment. He contends that the circuit court erred when it denied his petition without an evidentiary hearing. We agree and reverse the order, remanding the matter for a WIS. STAT. § 980.09(2) evidentiary hearing.

## BACKGROUND

¶ 2. The relevant facts are brief and undisputed. On January 21, 2005, Arends was committed as a sexually violent person under WIS. STAT. ch. 980. On August 10, Arends filed a default petition for discharge;

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise indicated.

■■■■■■■■■■■■■

in other words, he declined to waive his right to make such petition. The circuit court determined that discharge was not appropriate at that time. In July 2006, a reexamination report by Dr. James Harasymiw was filed with the court. A treatment progress report prepared by Sand Ridge Secure Treatment Center was filed as well. Arends commitment under ch. 980 continued.

¶ 3. On June 7, 2007, Arends moved for the appointment of counsel and for an expert to perform an examination and participate in the proceedings on his behalf. The circuit court granted the motion, ordering Dr. Sheila Fields, a clinical and forensic psychologist, to participate on Arends' behalf.

¶ 4. About six weeks later, on August 9, Sand Ridge filed a new treatment progress report and a reexamination report by Dr. William Schmitt. In developing his report, Dr. Schmitt reviewed Arends' treatment records, previous examination reports, actuarial tools for predicting recidivism, and the Psychopathy Checklist-Revised (PCL-R). He also conducted a clinical interview with Arends. Ultimately, Dr. Schmitt concluded that Arends suffered from six mental disorders, including antisocial personality disorder. However, Dr. Schmitt also stated:

> [D]ue to specifics involved with Mr. Arends' offense history as an adolescent . . . this examiner cannot offer an opinion, to a reasonable degree of professional certainty, regarding his current risk category (low, medium, high). Consequently, this examiner cannot offer an opinion as to whether Mr. Arends is currently "more likely than not" to commit another sexually violent offense.

¶ 5. Dr. Fields followed with her report soon thereafter. She included several findings drawn from three clinical interviews, the PCL-R, and her review of records dating back to Arends' initial commitment. Dr.

165

Fields report, dated August 13, 2007, stated that Arends had "no reports of inappropriate sexual behavior since October 2003" and that the last incident of actual criminal sexual activity occurred when Arends was fourteen years old. At the time of Dr. Fields' report, Arends was twenty-one years old. In her report, Dr. Fields took up the issues of continuing mental illness and continuing dangerousness separately. She began by explaining the difficulty of predicting adult behavior and mental health based on diagnoses made during the person's youth. She related "less than full confidence" that Arends suffered from antisocial personality disorder. In her assessment of Arends' dangerousness and recidivism risk, Dr. Fields questioned the usefulness of actuarial scales developed for adult offenders such as Arends, where the offenses were committed when he was a juvenile. She referenced "accumulating research that juvenile offenders as a whole are less likely to sexually reoffend than are adults." Dr. Fields concluded that Arends was "almost certainly" not in that group of "high-risk juvenile-only sex offenders" that are likely to reoffend as adults. In sum, Dr. Fields opined that Arends "may" have a mental disorder that qualifies him for commitment under Wis. Stat. ch. 980, but the diagnosis of antisocial personality disorder "cannot be offered very confidently." She further stated that his tendency toward sexual violence is "quite debatable." She relied heavily on the fact that Arends' behavior had changed as an adult. She concluded that Arends was not "more likely than not to sexually reoffend," and recommended that he be discharged or considered for supervised release.

¶ 6.  Arends, relying on Dr. Fields' report, petitioned for discharge under Wis. Stat. § 980.09. Arends alleged that his condition had changed since his initial commitment and that he no longer met the criteria for Wis. Stat. ch. 980 commitment. He asserted that he was

no longer more likely than not to commit a future act of sexual violence. The circuit court denied the petition without a hearing on September 26, stating, "The court does not find probable cause exists to conduct a hearing on the Petition." Arends appeals.

## DISCUSSION

¶ 7.   Arends presents but one issue for our review: Whether the circuit court erred when it denied his discharge petition without an evidentiary hearing. The court's decision to grant or deny an evidentiary hearing on a petition for discharge is guided by WIS. STAT. § 980.09. Whether the court properly interpreted and applied the statutory standard is a question of law for our de novo review. *See Knight v. Milwaukee County*, 2002 WI 27, ¶ 14, 251 Wis. 2d 10, 640 N.W.2d 773.

¶ 8.   The parties acknowledge that the violent sexual offender statutes were extensively revised by 2005 Wis. Act 434 (effective Aug. 1, 2006). Prior to August 2006, the law required that, upon receiving a petition for discharge that was not approved by the Department of Health and Family Services (DHFS) secretary:

> [T]he court shall set a probable cause hearing to determine whether facts exist that warrant a hearing on whether the person is still a sexually violent person . . . .
>
> If the court determines at the probable cause hearing . . . that probable cause exists to believe that the committed person is no longer a sexually violent person, then the court shall set a hearing on the issue.

WIS. STAT. § 980.09(2)(a) and (b) (2003–04). The statute authorized the circuit court to engage in a probable

cause hearing, a paper review of the reexamination reports, in order to "weed out frivolous petitions." *State v. Paulick*, 213 Wis. 2d 432, 438–39, 570 N.W.2d 626 (Ct. App. 1997). The question the court sought to answer at such a hearing was whether probable cause existed to establish that the individual seeking discharge was no longer a sexually violent person. *State v. Thiel*, 2004 WI App 140, ¶ 16, 275 Wis. 2d 421, 685 N.W.2d 890. The probable cause determination under § 980.09(2)(a) (2003–04) was the same as the probable cause determination in a criminal proceeding; that is, the circuit court was to determine whether there was a plausible expert opinion that, if believed, would establish probable cause to believe a person was no longer a sexually violent person within the meaning of the statute. *State v. Kruse*, 2006 WI App 179, ¶ 30, 296 Wis. 2d 130, 722 N.W.2d 742.

¶ 9. Our supreme court has long held that the Wis. Stat. ch. 980 civil commitment procedure does not violate equal protection, due process, double jeopardy, or ex post facto safeguards. In *State v. Post*, 197 Wis. 2d 279, 293–94, 541 N.W.2d 115 (1995), the supreme court considered the constitutional implications of Wis. Stat. § 980.09(2) (1993–94), specifically addressing whether the commitment of a sexually violent person constitutes treatment or punishment. Comparing the recommitment procedures for sexually violent offenders with those for mental commitments under Wis. Stat. ch. 51, the court concluded that the "increased likelihood of accurate initial [ch.] 980 commitment decisions reduces the need for some of the recommitment procedures that act as a safety net in chapter 51." *Post*, 197 Wis. 2d at 326. The court further held that "the opportunities to seek release every six months and discharge annually are sufficient to meet constitutional demands and the

state is not required to provide access to unlimited additional hearings unless adequate cause is shown." *Id.* at 327.

¶ 10.  On the same day that it decided *Post*, the supreme court also addressed constitutional challenges to Wis. Stat. ch. 980 in *State v. Carpenter*, 197 Wis. 2d 252, 541 N.W.2d 105 (1995). There, the court addressed whether civil commitment of a sexually violent person subjects the person to multiple punishments for the same offense, thereby placing the person in double jeopardy. *Id.* at 262–63. The *Carpenter* court concluded that a civil commitment under ch. 980 is not punishment and therefore survives constitutional scrutiny. *See Carpenter*, 197 Wis. 2d at 272. The court specifically pointed to the supervised release and discharge provisions of the statutes as key to the constitutionality of sexually violent person commitments:

> Respondents rely heavily on the fact that those committed under [Wis. Stat. ch. 980 (1993–94)] face an indefinite period of confinement in a secure facility as evidence that the true intent of the statute is punishment. However, ch. 980 expressly provides for supervised release either at the time of commitment . . . or upon the person's subsequent petition after receiving treatment . . . . Further, the person is entitled to discharge as soon as his or her dangerousness or mental disorder abates.
>
> We conclude that these provisions significantly detract from respondents' argument that the statute's primary purpose is punishment.

*Carpenter*, 197 Wis. 2d at 268 (citations omitted).

¶ 11.  Following revisions by 1999 Wis. Act 9, which eliminated a court's ability to order supervised release at the time of the original commitment and extended the length of time an offender had to wait to

169

petition for supervised release, the supreme court again found the sexually violent persons commitment law constitutional. *See State v. Rachel*, 2002 WI 81, ¶¶ 69–70, 254 Wis. 2d 215, 647 N.W.2d 762. However, Justice Bablitch wrote in his dissent that he believed the new provisions ran afoul of constitutional due process and double jeopardy protections. *Id.*, ¶¶ 89, 102 (Bablitch, J., dissenting). Justice Bradley wrote separately to state that the new law nearly crossed the line and that assumptions about good faith application of the law were "wearing thin." *Id.*, ¶¶ 72–75 (Bradley, J., concurring).

¶ 12.  The most recent case law on this topic comes from *Kruse*, where we specifically addressed the role of the court in determining whether a petitioner is entitled to a full evidentiary discharge hearing. Although we decided *Kruse* on August 10, 2006, the facts underlying the appeal occurred well before the revised version of WIS. STAT. § 980.09 took effect; there, we applied the 2001–02 version of the statute. *See Kruse*, 296 Wis. 2d 130, ¶ 1 n.1. The two issues we addressed were whether the circuit court may weigh competing reexamination reports when deciding the probable cause question, and what substantive standard the evidence must meet to show probable cause that the petitioner is not "still a sexually violent person." *Id.*, ¶ 19. We held that, if presented with two conflicting reexamination reports, one of which would tend to establish probable cause, the court was to order an evidentiary hearing. *Id.*, ¶ 30. We also held that, under the specific facts of that case, the expert opinion offered to support the discharge petition did not rely "on any fact, professional knowledge, or research that was not already considered by the experts who testified at the commitment hearing," and therefore did not establish probable cause that Kruse was "no longer" a sexually violent person. *Id.*, ¶¶ 37, 42.

¶ 13. With that history established, we turn to the current version of the WIS. STAT. ch. 980 discharge statute, which states in relevant part:

[(1)] A committed person may petition for discharge at any time. The court shall deny the petition under this section without a hearing unless the petition alleges facts from which the court or jury may conclude the person's condition has changed since the date of his or her initial commitment order so that the person does not meet the criteria for commitment as a sexually violent person.

(2) The court shall review the petition within 30 days and may hold a hearing to determine if it contains facts from which the court or jury may conclude that the person does not meet the criteria for commitment as a sexually violent person. In determining under this subsection whether facts exist that might warrant such a conclusion, the court shall consider any current or past reports filed under [WIS. STAT. §] 980.07, relevant facts in the petition and in the state's written response, arguments of counsel, and any supporting documentation provided by the person or the state. If the court determines that the petition does not contain facts from which a court or jury may conclude that the person does not meet the criteria for commitment, the court shall deny the petition. If the court determines that facts exist from which a court or jury could conclude the person does not meet criteria for commitment the court shall set the matter for hearing.

WIS. STAT. § 980.09(1) and (2).[2]

¶ 14. Unlike the previous statutory provision, the current WIS. STAT. § 980.09 does not distinguish be-

[2] The current Wisconsin Statute does not provide a subsection designation for the first part of WIS. STAT. § 980.09, but does designate the second part as subsection (2). We refer to the first part as subsection (1) for clarity.

tween petitions made with or without the approval of the DHFS secretary. Furthermore, a discharge petition no longer automatically triggers a probable cause hearing. Rather, the circuit court may review the petition without a hearing, or it may choose to hold a hearing, to determine whether a "court or jury may conclude the person's condition has changed since the date of his or her initial commitment order so that the person does not meet the criteria for commitment as a sexually violent person." Sec. 980.09(1). If the court determines that a "court or jury could conclude" the person's condition has changed, it must order an evidentiary hearing. Sec. 980.09(2). This appeal, therefore, requires an inquiry into the court's newly defined role for determining whether a person committed under WIS. STAT ch. 980 is entitled to an evidentiary hearing on his or her discharge petition.

¶ 15. When construing a statute, we begin with the language of the statute and give it its common, ordinary, and accepted meaning, except that technical or specially defined words are given their technical or special definitions. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We interpret statutory language in the context in which it is used, and to avoid absurd or unreasonable results. *Id.*, ¶ 46. We also consider the scope, context, and purpose of the statute insofar as they are ascertainable from the text and structure of the statute itself. *Id.*, ¶ 48. If, employing these principles, there is only one reasonable meaning, then we apply this plain meaning. *Id.*, ¶ 46.

¶ 16. To understand the implications of the legislature's overhaul of the sexually violent person commitment statutes, we have guidance available from

172

the Joint Legislative Council's Special Committee on Sexually Violent Person Commitments (the Committee). The Joint Legislative Council established the Committee on May 21, 2004, and directed it to study existing law regarding the commitment, periodic reexamination, supervised release, and discharge of sexually violent persons.[3] Over the course of the next two years, the Committee researched constitutional issues concerning civil commitment of sexually violent persons, reviewed the existing Wisconsin law, considered input from the state public defender and the Wisconsin Department of Justice, and took testimony from staff at Sand Ridge Secure Treatment Center.[4]

¶ 17.   It is clear from the memoranda that the main concern for many was the supervised release procedure; more specifically, where persons on supervised release would be placed in the community. A person who is granted supervised release remains in the custody of the state, which determines where the person will live and what conditions he or she must meet. *See State v. Morford*, 2004 WI 5, ¶¶ 53–54, 268 Wis. 2d 300, 674

---

[3] On September 17, 2004, the Committee submitted Staff Brief 04–3, which described the sexual predator laws related to civil commitment of sexually violent persons under WIS. STAT. ch. 980. It provides background related to the constitutionality of sexual predator commitments generally, and describes Wisconsin's sexually violent person commitment law as it existed prior to August 2006. Staff Brief 04–3 is available at www.legis.state.wi.us/lc/committees/study/ 2004/SVPC/files/sb04_3.pdf (last visited Nov. 5, 2008).

[4] Sand Ridge Secure Treatment Center is a secure institution that operates the state's treatment program for sexually violent persons. The state's other WIS. STAT. ch. 980 secure institution, the Wisconsin Resource Center, focuses on individuals who are detained but not yet committed, or are refusing treatment.

173

N.W.2d 349 (state is charged with "custody and control" of persons on WIS. STAT ch. 980 supervised release). In contrast, a person who is granted a discharge is no longer in custody and has the freedom to choose where to live and whether to seek any further treatment. *See* WIS. STAT. § 980.09(4) (when a petition is granted, the person is "discharged from the custody of the department").

■

¶ 18.   The State acknowledges that, once a person has been found to be a sexually violent person, periodic review, as required by the statute, serves the purpose of terminating a commitment as soon as practicable once the person no longer meets the definition of a sexually violent person. To meet constitutional muster, a state must discharge a person who is not both mentally ill and dangerous. *See Foucha v. Louisiana,* 504 U.S. 71, 71 (1992) (a person subject to a mental health commitment "may be held as long as he is both mentally ill and dangerous, but no longer"). However, the State asserts, at the reexamination stage "there is a need to avoid the public expense of a discharge trial when the evidence is unlikely to demonstrate that a person is no longer an appropriate subject for commitment. And so long as there is a periodic review, due process is satisfied." While we would generally agree, we emphasize that *meaningful* periodic review has kept the commitment scheme constitutionally sound. *See Rachel,* 254 Wis. 2d 215, ¶ 48 n.5 (when considering the methods by which a committed person can gain discharge, agencies and individuals charged with monitoring the treatment and institutionalization of sexually violent persons are given the "benefit of the assumption" that they will carry out their duties in good faith).

¶ 19.   Under the previous statute, the circuit court determined "whether probable cause exists to establish

174

that an individual seeking discharge is *no longer* a sexually violent person." *State v. Fowler*, 2005 WI App 41, ¶ 8, 279 Wis. 2d 459, 694 N.W.2d 446 (emphasis added). If probable cause did not exist, the individual was not entitled to an evidentiary hearing. *See id.*, ¶ 32.

¶ 20.   The State correctly observes that the probable cause hearing is a thing of the past; however, the question remains how the new procedure differs. On June 29, 2006, this court decided *State v. Combs*, 2006 WI App 137, 295 Wis. 2d 457, 720 N.W.2d 684, in which we interpreted the threshold determination of what constitutes probable cause to warrant a hearing on whether a person is "still . . . sexually violent," pursuant to WIS. STAT. § 980.09(2). *See Combs*, 295 Wis. 2d 457, ¶ 21. In *Combs*, we held:

> [I]n order to provide a basis for probable cause to believe a person is no longer sexually violent under [WIS. STAT.] § 980.09(2), an expert's opinion must depend upon something more than facts, professional knowledge, or research that was considered by an expert testifying in a prior proceeding that determined the person to be sexually violent. By way of example, an opinion that a person is not sexually violent based at least in part on facts about the committed person that did not occur until after the prior adjudication would meet this standard, as would an opinion based at least in part on new professional knowledge about how to predict dangerousness. These examples are not exhaustive.

*Combs*, 295 Wis. 2d 457, ¶ 32 (footnote omitted).

¶ 21.   The State suggests that the new procedure differs by giving the circuit court a greater gatekeeper role. It contends that the revised statute breaks with the standard set forth in *Kruse*, where we stated:

> [I]n assessing one or more re-examination reports at a hearing under [WIS. STAT.] § 908.09(2)(a), the circuit

> court is to determine whether there is a plausible expert opinion that, if believed, would establish probable cause to believe a person is no longer a sexually violent person . . . . If there are two reports with conflicting opinions on this point, the court does not decide which it finds more persuasive.

*Kruse*, 296 Wis. 2d 130, ¶ 30 (citations omitted). Specifically, the State argues, "Under the new statute, the court now must review the documents independently and weigh[] the evidence before determining whether to hold a hearing on the petition for discharge." It continues, "This change keeps courts from wasting resources . . . [and] allows a hearing only in cases where the person *actually has had a change* in condition or dangerousness and is no longer sexually violent." (Emphasis added.) The State argues that Arends "did not prove that his condition had changed" and therefore the denial of his petition was proper. We disagree.

¶ 22. The State's premise that the new statute grants the circuit court a greater role than it played in a probable cause determination runs contrary to the development of the law. Discharge proceedings play a critical role in the constitutionality of civil commitments. Courts have repeatedly confirmed this. *See, e.g., Foucha*, 504 U.S. at 71 (1992) (a person subject to a mental health commitment "may be held as long as he is both mentally ill and dangerous, but no longer"); *Thiel*, 275 Wis. 2d 421, ¶ 23 ("our supreme court has tied the constitutionality of Wis. Stat. ch. 980 to the availability of periodic reviews that reassess the person's dangerousness to determine if a lesser restriction of his or her liberty is warranted"); *State v. Rachel*, 254 Wis. 2d 215, ¶ 66 (ch. 980 "passes constitutional muster" because confinement is "linked to the dangerousness of the committed person" and there are proce-

dures for ending confinement when the person is no longer dangerous); *Combs*, 295 Wis. 2d 457, ¶ 28 (the periodic reexamination and probable cause hearing for discharge "are among the protections that the supreme court has considered significant in concluding that Wis. Stat. ch. 980 does not violate the equal protection clause or the right to due process"). By interpreting the discharge procedure in a way that appears more punitive, such that petitions would be less likely to merit an evidentiary hearing, we erode one of the key provisions that courts have relied upon to uphold the constitutionality of ch. 980.[5]

¶ 23.  Furthermore, the State's interpretation of the new standard ignores the plain meaning of the statutory language. The legislature could have retained "probable cause" as a standard, but instead required the showing of "a change" from which a judge or jury "may conclude" the person no longer meets the definition of a sexually violent person. Wis. Stat. § 980.09(1). The State's interpretation would require a petitioner to "prove" that his or her condition has "actually changed" just to meet the threshold for an evidentiary hearing. The statute places no such burden on the petitioner.

---

[5] We are concerned about the new statute's apparent sanctioning of a petition review by the court without counsel present. As the statute is currently written, the circuit court has the option of reviewing the petition without a hearing, or holding a hearing to determine whether an evidentiary discharge hearing is required. Wis. Stat. § 980.09(1) and (2). Under the previous version of the statute, the petition received a probable cause hearing at which petitioner's counsel had the right to appear. *See* Wis. Stat. § 980.09(2)(a) (2003–04). Although the issue is not before us in this case, the potential for further diminished rights of the petitioner strengthens our view that the threshold for obtaining an evidentiary hearing has not been raised.

The circuit court's role as gatekeeper, to weed out frivolous petitions, is not elevated by the revised statute. The revised statute's petition review procedure, like the probable cause procedure before it, is not a substitute for the evidentiary hearing. *See Kruse*, 296 Wis. 2d 130, ¶ 31.

¶ 24.  In his petition, Arends alleged that his condition had changed such that he no longer met the definition of a sexually violent person because (1) "the passage of time demonstrated that anti-social behavior expected under an earlier diagnosis did not occur," (2) a lower PCL-R score showed a change in Arends' condition, and (3) his successful progress in treatment suggested a change in his condition.[6] Arends contends that Dr. Fields' reexamination report did not simply reinterpret data that was present when Arends was originally committed, but relied on new research and new facts about his current condition. He distinguishes his case from that of *Combs*, 295 Wis. 2d 457, ¶ 14, where we held that Combs could not challenge the original grounds for commitment by offering new interpretations of old data. *See id.*, ¶ 34. *Combs*, though decided prior to the effective date of the new statute, speaks to the same issue that arises under the current version:  *a change* in the petitioner's condition *since the time of initial commitment.* To provide grounds to believe a person is no longer sexually violent, "an expert's opinion must depend upon something more

___

[6] Arends also observes that although "significant progress in treatment" is one of the criteria for supervised release under WIS. STAT. § 980.08(4)(cg), it is not required for a discharge hearing under WIS. STAT. § 980.09. However, a new diagnosis may support a petition for discharge under § 980.09, as may "progress in treatment." *See State v. Pocan*, 2003 WI App 233, ¶ 12, 267 Wis. 2d 953, 671 N.W.2d 860.

than facts, professional knowledge, or research that was considered by an expert testifying in a prior proceeding . . . ." *Id.*, ¶ 32.

¶ 25. Here, Dr. Fields considered new observations of Arends' behavior and interpreted the data using existing and accepted tools of the psychology profession. Her report, which was based in part on the absence of deviant sexual arousal and anti-social behavior, also incorporated new research on the topic of predicting recidivism risk for juvenile offenders as compared to adult offenders. This is sufficient for purposes of WIS. STAT. § 980.09(1) and (2). *See Combs*, 295 Wis. 2d 457, ¶ 32 (petitioner can satisfy the standard when the expert's opinion is "based at least in part on new professional knowledge about how to predict dangerousness"). Arends is entitled to an evidentiary hearing on his discharge petition.

## CONCLUSION

██

¶ 26.    The legislature has revised WIS. STAT. § 980.09 to eliminate the probable cause standard that guided a court's review of a committed person's petition for discharge. The new procedure requires a court to order an evidentiary hearing if the petition alleges facts from which a judge or jury *may conclude* that there is *a change* in the person's condition since the date of initial confinement so that the person no longer meets the commitment criteria. *See* § 980.09. Here, the circuit court chose not to hold a hearing to make that determination and, upon its own review of the reexamination and treatment progress reports, denied the petition. As indicated by the analysis above, Arends' petition is supported by facts from which a judge or jury

may conclude his condition is changed and thus he is entitled to an evidentiary hearing on his petition. Accordingly, we reverse the order of the circuit court and remand for further proceedings.

*By the Court.*—Order reversed and cause remanded with directions.