In re the Commitment of Ray A. Schiller:

State of Wisconsin, Plaintiff-Respondent,

v.

Ray A. Schiller, Respondent-Appellant.

Court of Appeals

*No. 02–2963. Submitted on briefs May 23, 2003.—Decided August 6, 2003.*

2003 WI App 195

(Also reported in 669 N.W.2d 747.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Jack E. Schairer*, assistant state public defender, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Eileen W. Pray*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

¶ 1. ANDERSON, P.J.   Ray A. Schiller appeals a trial court order finding no probable cause to conclude that Schiller was no longer a sexually violent person and denying his WIS. STAT. ch. 980 (2001–02)[1] petition for discharge. Schiller argues that the trial court erroneously denied his right to a jury trial on the issue of discharge when it found no probable cause. He argues that his expert's report and testimony established probable cause that he was not a sexually violent person and that therefore a trial was required on the petition for discharge.[2] We disagree and, therefore, affirm the trial court.

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

[2] WISCONSIN STAT. § 980.03 provides certain rights to a person who succeeds in establishing probable cause that he or she is no longer a sexually violent person, one of which is the right to a jury trial if requested. *See also* WIS. STAT. § 980.09(2). This section provides in relevant part:

> (3) The person who is the subject of the petition, the person's attorney, the department of justice or the district attorney may request that a trial under s. 980.05 be to a jury of 12. A request for a jury trial shall be made as provided under s. 980.05. Notwith-

¶ 2.    Schiller petitioned for supervised release under Wis. Stat. § 980.08 and petitioned by default for discharge without the secretary's approval under Wis. Stat. § 980.09(2). For purposes of judicial economy, the trial court heard Schiller's petition for supervised release and his petition for discharge at the same evidentiary hearing on October 9, 2002.[3] The only evidence

standing s. 980.05(2), if the person, the person's attorney, the department of justice or the district attorney does not request a jury trial, the court may on its own motion require that the trial be to a jury of 12. A verdict of a jury under this chapter is not valid unless it is unanimous.

Sec. 980.03(3).

[3] A Default Petition for Discharge Without Secretary's Approval is triggered when a Wis. Stat. ch. 980 respondent does not sign the last page of a periodic re-examination report. We note that, generally, in the case of a Wis. Stat. § 980.09(2)(a) Default Petition for Discharge Without Secretary's Approval, the probable cause hearing is not an evidentiary hearing—it is simply a paper review of all re-examination reports, with argument by counsel. See State v. Paulick, 213 Wis. 2d 432, 438–39, 570 N.W.2d 626 (Ct. App. 1997).

Wisconsin Stat. § 980.09 provides in relevant part:

(2) Petition without secretary's approval. (a) A person may petition the committing court for discharge from custody or supervision without the secretary's approval. At the time of an examination under s. 980.07(1), the secretary shall provide the committed person with a written notice of the person's right to petition the court for discharge over the secretary's objection. The notice shall contain a waiver of rights. The secretary shall forward the notice and waiver form to the court with the report of the department's examination under s. 980.07. If the person does not affirmatively waive the right to petition, the court shall set a probable cause hearing to determine whether facts exist that warrant a hearing on whether the person is still a sexually violent person. The committed person has a right to have an attorney represent him or her at the probable cause hearing, but the person is not entitled to be present at the probable cause hearing.

before the court was the report and testimony of each side's expert. Schiller argued that the opinion of his expert, Dr. Diane Lytton—which stated that Schiller did not seem to lack volitional control—established probable cause that Schiller was not a sexually violent person and that this opinion established that a trial was required on his petition for discharge.

¶ 3.  Specifically, Dr. Lytton testified that during her review of records and other reports and her interview with Schiller, she "found no evidence that would indicate he had any kind of mental disorder or mental impairment that would affect his volitional control." She stated:

> [Schiller] apparently chose to offend, but that was a choice. My impression of him was that those—that was a choice, choices that he made, that he didn't have—you know, he was not an out-of-control individual, he wasn't

---

(b) If the court determines at the probable cause hearing under par. (a) that probable cause exists to believe that the committed person is no longer a sexually violent person, then the court shall set a hearing on the issue. At a hearing under this paragraph, the committed person is entitled to be present and to the benefit of the protections afforded to the person under s. 980.03. The district attorney or the department of justice, whichever filed the original petition, shall represent the state at a hearing under this paragraph. The hearing under this paragraph shall be to the court. The state has the right to have the committed person evaluated by experts chosen by the state. At the hearing, the state has the burden of proving by clear and convincing evidence that the committed person is still a sexually violent person.

(c) If the court is satisfied that the state has not met its burden of proof under par. (b), the person shall be discharged from the custody or supervision of the department. If the court is satisfied that the state has met its burden of proof under par. (b), the court may proceed to determine, using the criterion specified in s. 980.08(4), whether to modify the person's existing commitment order by authorizing supervised release.

psychotic, he didn't have some kind of a brain injury that affected his behavior. So, in my opinion those were choices that he made.

¶ 4. Dr. Lytton also explicitly concluded in her report that Schiller was a pedophile:

> In my opinion, to a reasonable degree of psychological certainty, Mr. Schiller has Pedophilia. That mental disorder, as expressed in Mr. Schiller, likely predisposes him to commit sex offenses against children. A comprehensive risk analysis led to opinions that he is likely at high risk to commit another such offense, and that he continues to require a secure setting to manage this risk. Sex offender treatment should be completed prior to consideration for supervised release.

¶ 5. The State disagreed that probable cause was established by Dr. Lytton's opinion. It presented the expert report and testimony of Dr. Christopher Snyder, a forensic clinical psychologist with the Department of Health and Family Services evaluation unit at the Sandridge Secure Treatment Center. Dr. Snyder's report and testimony were based on review of materials and an interview with Schiller, as well as periodic re-examinations of Schiller. Like Dr. Lytton, Dr. Snyder diagnosed Schiller to be a pedophile. Specifically, he testified that Schiller is "pedophilic ... sexually attracted to females Non-exclusive Type." In his report, Dr. Snyder summarized his findings as follows:

> Mr. Schiller is diagnosed with Pedophilia, Sexually Attracted to Females, Nonexclusive Type, which is a mental disorder, acquired or congenital, that affects his emotional or volitional capacity, and predisposes him to commit sexually violent acts as defined by Chapter 980.

997

At this time, Mr. Schiller continues to show substantial probability that he will commit another sexually violent offense.

■

¶ 6. After the hearing, the trial court denied Schiller's petition for supervised release under WIS. STAT. § 980.08. It also denied his petition for discharge under WIS. STAT. § 980.09(2), finding no probable cause to conclude that Schiller was no longer a sexually violent person. Although Schiller's notice of appeal states that he appeals both rulings of the trial court, his brief addresses only the denial of his petition for discharge. We decline to address arguments insufficiently developed or unsupported by legal authority. *Reiman Assocs., Inc. v. R/A Adver., Inc.*, 102 Wis. 2d 305, 306 n.1, 306 N.W.2d 292 (Ct. App. 1981) (an issue raised but not briefed or argued is deemed abandoned). Accordingly, we address Schiller's arguments only as they relate to the denial of his petition for discharge.

■

¶ 7. On appeal, Schiller argues that sufficient facts were introduced at the October 9, 2002 hearing to establish probable cause and, thus, to warrant a jury trial on the issue of discharge. We disagree.

■

¶ 8. We must segregate factual determinations from conclusions of law and apply the appropriate standard of review to each. *State v. Thayer*, 2001 WI App 51, ¶ 22, 241 Wis. 2d 417, 626 N.W.2d 811. While findings of fact will not be set aside unless clearly erroneous, the application of these facts to a legal standard, such as probable cause, is a question of law that we review independently of the trial court. *Id.*

¶ 9.   The issue is whether the trial court erroneously denied Schiller a jury trial on the issue of discharge when it found no probable cause to establish that he was no longer a sexually violent person. We conclude that Dr. Lytton's report and testimony do not rise to the level of probable cause and therefore the trial court did not err when it found no probable cause to establish that Schiller was no longer a sexually violent person. In other words, probable cause that a detainee is no longer a sexually violent person is not demonstrated by an expert's conclusion that a detainee has the ability to control his or her behavior.

¶ 10.   Although Dr. Lytton's report expresses her opinion that Schiller "has Pedophilia" and her opinion that this diagnosis "predisposes him to commit sex offenses against children," she nonetheless seems to misinterpret the phrase "serious difficulty in controlling behavior" as this phrase has been used by our courts. Dr. Lytton's testimony appears to equate "serious difficulty in controlling behavior" with a person's inability to make choices:

> [Schiller] apparently chose to offend, but that was a choice. My impression of him was that those—that was a choice, choices that he made, that he didn't have—you know, he was not an out-of-control individual, he wasn't psychotic, he didn't have some kind of a brain injury that affected his behavior. So, in my opinion those were choices that he made.

¶ 11.   However, a "serious difficulty in controlling behavior" is not about whether a person has the ability to make choices according to the United States Supreme Court, which recently addressed the constitutional requirements substantively limiting the civil commitment of a dangerous sexual offender in *Kansas*

*v. Crane*, 534 U.S. 407, 409 (2002). The *Crane* Court specifically recognized the fact that "most severely ill people—even those commonly termed 'psychopaths'—*retain some ability to control their behavior.* Insistence upon absolute lack of control would risk barring the civil commitment of highly dangerous persons suffering severe mental abnormalities." *Id.* at 412 (emphasis added; citations omitted).

¶ 12. The *Crane* Court further indicated that we must not only consider whether the person has the ability to make choices, but the degree to which those choices are driven by a mental disorder:

> [S]erious difficulty in controlling behavior . . . when viewed in light of such features of the case as the nature of the psychiatric diagnosis, and the severity of the mental abnormality itself, must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case.

*Id.* at 413.

¶ 13. Furthermore, the *Crane* Court went on to hold that pedophilia is a mental disorder that *by definition* includes a diagnosis of lack of control:

> [P]edophilia—a mental abnormality that critically involves what a lay person might describe as a lack of control. DSM-IV 571–572 (listing as a diagnostic criterion for pedophilia that an individual have acted on, or been affected by, "sexual urges" toward children).

*Crane*, 534 U.S. at 414.

¶ 14. The Wisconsin Supreme Court's opinion in *State v. Laxton*, 2002 WI 82, 254 Wis. 2d 185, 647 N.W.2d 784, *cert. denied, Laxton v. Wisconsin*, 123 S. Ct. 870 (U.S. Jan. 13, 2003), dovetails the opinion of the

1000

United States Supreme Court in *Crane*. *Laxton* involved a constitutional challenge to the sexually violent person commitment law (Wis. Stat. ch. 980 (1997–98)). *Laxton*, 254 Wis. 2d 185, ¶ 1. There, the Wisconsin Supreme Court held that a separate finding of serious difficulty in controlling behavior is not constitutionally required and that the requisite proof of lack of control is established when the nexus between a person's mental disorder and dangerousness has been established:

> [W]e conclude that such a civil commitment does not require a separate finding that the individual's mental disorder involves serious difficulty for such person to control his or her behavior. The requisite proof of lack of control is established when the nexus between such person's mental disorder and dangerousness has been established. Specifically, we conclude that evidence showing that the person's mental disorder predisposes such individual to engage in acts of sexual violence, and evidence establishing a substantial probability that such person will again commit such acts, *necessarily and implicitly includes proof that such person's mental disorder involves serious difficulty in controlling his or her behavior.* Such evidence distinguishes such a person from the dangerous but typical recidivist.

*Id.*, ¶ 2 (emphasis added).

¶ 15. Finally, our decision is supported by the fact that the conclusions of both Dr. Lytton and Dr. Snyder reveal substantial agreement in the areas our courts have held to be determinative in such an inquiry. First, both experts agreed with the United States Supreme Court's definition of pedophilia—each testifying that one diagnosed with pedophilia is predisposed to commit acts of sexual violence against children. Additionally, they both concurred that Schiller continues to be afflicted with pedophilia, that this pedophiliac condition

predisposes him to commit acts of sexual violence, and that he is substantially probable to commit acts of sexual violence in the future. Moreover, both experts determined that Schiller had not completed sufficient treatment to be safely released to the community on supervised release.

¶ 16.    Schiller did not demonstrate probable cause that he was no longer a sexually violent person and therefore he was not entitled to a jury trial. The trial court did not err in denying his petition for discharge.

*By the Court.*—Order affirmed.