STATE of Wisconsin, Petitioner-Respondent,

v.

Robert M. FOWLER, Respondent-Appellant.†

Court of Appeals

*No. 03–3158. Submitted on briefs December 7, 2004.—Decided February 8, 2005.*

2005 WI App 41

(Also reported in 694 N.W.2d 446.)

† Petition to review filed.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Randall E. Paulson*, assistant state public defender, Milwaukee.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *Sandra L. Nowak*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Kessler, JJ.

¶ 1. WEDEMEYER, P.J. Robert M. Fowler appeals from an order dismissing his petition for discharge pursuant to Wis. Stat. § 980.09(2) (2003–04).[1] He claims the trial court erred when it concluded there was probable cause to believe that the facts do not warrant a discharge hearing as to whether he was still a sexually violent person. Because there are substantial grounds in the record to support the trial court's conclusion that Fowler did not establish probable cause to believe that he is not a sexually violent person, and therefore is not entitled to an evidentiary hearing, we affirm.

## BACKGROUND

¶ 2. On July 9, 1997, the State of Wisconsin filed a chapter 980 petition seeking to commit Fowler. A jury found him to be a sexually violent person. After a hearing on December 2, 1999, Fowler was committed for treatment at Sand Ridge Secure Treatment Center.

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

An appeal challenging the commitment was unsuccessful and a petition for review to the supreme court was denied.

¶ 3. On January 9, 2003, Dr. James Harasymiw filed a chapter 980.07–.08 re-examination report along with a Patient's Rights Disclosure Notice signed by Fowler, a Notice of Right to Petition for Discharge, a Waiver of Right to Petition for Discharge, and a cover letter stating that Fowler elected not to sign the Waiver of Right to petition for a discharge. In accord with WIS. STAT. § 980.09(2)(a), a probable cause hearing was held to determine whether Fowler was still a sexually violent person. The hearing took place on September 5, 2003. Pursuant to § 980.09(2)(a), Fowler was not present at the hearing.[2]

¶ 4. Dr. Harasymiw's re-examination report filed January 9, 2003, was based upon a prior chapter 980 evaluation which included treatment records, progress reports and results of various tests. Fowler declined to be examined. The report concluded that Fowler had a

---

[2] WISCONSIN STAT. § 980.09(2)(a) provides:

PETITION WITHOUT SECRETARY'S APPROVAL. (a) A person may petition the committing court for discharge from custody or supervision without the secretary's approval. At the time of an examination under s. 980.07 (1), the secretary shall provide the committed person with a written notice of the person's right to petition the court for discharge over the secretary's objection. The notice shall contain a waiver of rights. The secretary shall forward the notice and waiver form to the court with the report of the department's examination under s. 980.07. If the person does not affirmatively waive the right to petition, the court shall set a probable cause hearing to determine whether facts exist that warrant a hearing on whether the person is still a sexually violent person. The committed person has a right to have an attorney represent him or her at the probable cause hearing, but the person is not entitled to be present at the probable cause hearing.

mental disorder, anti-social personality disorder, which predisposed him to acts of sexual violence.

¶ 5. The doctor concluded that:

When all of these factors, including the PCL-R, RRA-SOR, Static99, and SRA Steps Two and Three, are considered regarding Mr. Fowler and analyzed in light of Ch.980 WSS, data indicate that he does not show a substantial decrease in the degree of risk he presents were he to be released from secure confinement at this time. The pattern of results from the risk assessment instruments would indicate that issues related to psychopathy are the major driving force in Mr. Fowler's sexual offending and are resistive to change.

¶ 6. The report concluded that while Fowler had made progress (at least with impulse control) his "efforts have been insufficient to make a significant change in his status since the last evaluation." Thus, he concluded that neither discharge nor supervised release was appropriate.

¶ 7. After arguments by counsel, the trial court concluded there was a lack of "probable cause" required to obtain a discharge hearing. On September 23, 2003, the trial court entered a written order effectuating its oral decision. Fowler has now timely appealed from that order.

## ANALYSIS

██

¶ 8. The question to be answered by a trial court at a WIS. STAT. § 980.09(2)(a) probable cause hearing is whether probable cause exists to establish that an individual seeking discharge is no longer a sexually violent person. *See State v. Schiller*, 2003 WI App 195, ¶ 9, 266 Wis. 2d 992, 669 N.W.2d 747. Whether the facts

establish probable cause to believe a person is no longer a sexually violent person is a question of law which we determine independently of the trial court.

■

¶ 9. In *State v. Paulick*, 213 Wis. 2d 432, 570 N.W.2d 626 (Ct. App. 1997), this court discussed the required procedures for the probable cause hearing under Wis. Stat. § 980.09(2)(a). We concluded that chapter 980 provides for an annual review for individuals who have been adjudicated sexually violent and placed in a secure institutional setting. *Paulick*, 213 Wis. 2d at 434. The statute affords a committed person the right to petition for release, with the trial court acting "as the gatekeeper weeding out frivolous petitions by committed persons who allege that they are no longer dangerous and are fit for release." *Id.* We further concluded that § 980.09(2)(a) "does not contemplate an evidentiary-type hearing like that provided in [Wis. Stat.] § 980.09(2)(b). Rather, the probable cause hearing is a paper review of the reexamination report(s) with argument that provides an opportunity for the committing court to weed out frivolous petitions . . . ." *Paulick*, 213 Wis. 2d at 438–39.

¶ 10. More recently, in *State v. Thiel*, 2004 WI App 140, 275 Wis. 2d 421, 685 N.W.2d 890, we held that "probable cause to believe a person is no longer a 'sexually violent person' is not satisfied by a recommendation of supervised release without more." *Id.*, ¶ 21. We explained that while a recommendation for supervised release may give rise to a reasonable inference that the committed person was not substantially probable to re-offend if placed on supervised release, such a recommendation was not relevant to the question before the court and did not, "standing alone, supply the

probable cause necessary to warrant a full evidentiary hearing on the matter." *Id.* We further explicated:

> By the plain language of the statute, the question at the probable cause hearing is not whether the individual is substantially probable to engage in acts of sexual violence if placed on supervised release or even if discharged from commitment; the statute draws no such distinction. Rather, the question at the probable cause stage is simply whether it is substantially probable that the person will engage in acts of sexual violence without regard to any specific restrictions, supervision or time frame. It is a black-and-white determination—it is either substantially probable that the person will engage in acts of sexual violence or it is not.

*Id.*, ¶ 17.

¶ 11. We deem the probable cause determination under Wis. Stat. § 980.09(2)(a), to be the same as a probable cause determination in the circumstance of a criminal bindover proceeding and accordingly, subject to the same standards of review. Thus, upon review:

> "The reviewing court can examine the evidence only sufficiently to discover whether there was any substantial ground for the exercise of judgment by the committing magistrate. When the reviewing court has discovered that there is competent evidence for the judicial mind of the examining magistrate to act on in determining the existence of the essential facts, it has reached the limit of its jurisdiction and cannot go beyond that and weigh the evidence."

*State v. Berby*, 81 Wis. 2d 677, 684, 260 N.W.2d 798 (1978) (citation omitted).

¶ 12. We now summarize the re-examination reports that were before the court for a determination of

probable cause to discover whether there was competent evidence for the judicial mind to act upon in determining the existence of the essential facts necessary for a finding of probable cause that Fowler was not still a sexually violent person. Dr. James Harasymiw, Ph.D. of the Wisconsin Department of Health and Family Services, submitted a report on behalf of the State, and Dr. Lynn Maskel, M.D., M.S. submitted a report on behalf of Fowler. Both reports addressed not only whether Fowler was a suitable candidate for discharge but also supervised release.

¶ 13. Dr Harasymiw's report consisted of eight and one-half pages. By way of background, Harasymiw noted that Fowler had an extensive criminal record. Included in this record were three sexually-related offenses. "One of these was 2nd degree sexual assault and the other two were charges of false imprisonment due to the fact that the acts were interrupted by a passerby or police." These offenses occurred a short time after his release from prison and while he was on community supervision. The records revealed that the occasions for sex offender treatment "were marked by lack of motivation and resultant failure to benefit from the involvement." Staffing notes reflected his current involvement in the Corrective Thinking phase of Sex Offender Treatment on a regular basis, but his participation is only superficial for the reasons stated.

¶ 14. The report related that Fowler's behavior in the unit in which he lives was "mostly compliant." He did, however, get angry when confronted with violations of the unit's procedures. He complained about treatment programs and questioned their worth. He was not considered by the staff to be a troublemaker and exhibited a positive attitude.

¶ 15. As to the issue of the presence of a mental disorder, the Harasymiw report, based upon past assessments and current treatment records, opined that Fowler suffered from an Axis I, Polysubstance Dependence in a controlled environment and Axis II Antisocial Personality Disorder, "each of which substantially affects his cognitive and/or volitional processes." The report noted that while the "diagnosis [of dependence] did not predispose Mr. Fowler to commit sexually violent acts, as defined by Chapter 980 his history demonstrates that it may have had a facilitating role in these acts."

¶ 16. The Axis II diagnosis classified Fowler as having Antisocial Personality Disorder. This classification implied that Fowler suffers from a "long-term maladaptive pattern of behavior involving a disregard for and violation of the rights of others, failure to conform to social norms, impulsivity, aggressiveness and a disregard for the safety of himself and others." The report observed: "In Mr. Fowler's case this pattern manifested in his early teens through such acts as substance abuse and theft and later robbery[,] physical assault[,] and coerced sexual acts." Under this consideration, the examiner opined that "this disorder does predispose Mr. Fowler to engage in acts of violence including sexual violence, as defined by Chapter 980, and represents a mental disorder as defined by that statute."

¶ 17. Dr. Harasymiw set forth the sex offender risk assessment methods that he used in examining Fowler. He applied Hanson's Rapid Risk Assessment for Sex Offense Recidivism (RRASOR) from which he concluded Fowler was in a group that showed a 36.9% reconviction rate at ten years, a medium high level of risk for sexual recidivism.

¶ 18. He next used the Hare Psychopathy Checklist-Revised (PCL-R) to determine whether

Fowler was psychopathic. Here, Harasymiw found Fowler's rating showed "significant psychopathy." He then concluded that "[w]hen a high degree of sexual deviance co-exists with a high degree of psychopathy, the risk of recidivism, both sexual and violent, is high."

¶ 19. He further used the Structured Risk Assessment (SRA), which is a three-step process that includes a Static Risk Factor Assessment, a Deviance Assessment and an Assessment of Treatment Progress. In applying step one, Fowler was found to be a High Risk for Re-offense; applying step two, he was found to have made little treatment gain and still represented a high risk for sexual re-offending. Step three is utilized to "demonstrate whether a sex offender has changed to such a degree that his risk category may be revised."

¶ 20. In applying the factors which comprise this assessment step including the PCL-R, RRASOR, Static 99 and SRA Steps One and Two, Dr. Harasymiw concluded that the "data indicated that he does not show a substantial decrease in the degree of risk he presents were he to be released from secure confinement at this time." He finally concluded that "Mr. Fowler continues to show substantial probability that he will commit another sexually violent offense."

¶ 21. Dr. Maskel's report reflected the following. She reviewed the same record and file material as did Dr. Harasymiw in addition to the latter's report. Her report consisted of two and one-half pages. Dr. Maskel essentially disagreed with the fundamental conclusions reached by Dr. Harasymiw. We set forth these differences of opinion.

¶ 22. First, Dr. Maskel disputed the assertion that Fowler was involved in three instances of sexual assault. She conceded that a second-degree sexual assault occurred, but challenged the assertion that two others

took place. This dispute appeared to be a difference of interpretation, with other examiners agreeing with Dr. Harasymiw.

¶ 23. Second, Dr. Maskel agreed that Fowler had an Antisocial Personality Disorder with a long-standing pattern of maladaptive character traits, but did not conclude that this disorder constituted a mental disorder that affected his emotional or volitional capacity or that it predisposed him to future sexually violent acts. She concluded that the Antisocial Personality Disorder present in Fowler appeared to show some amount of improvement. She projected that due to age attrition, there would be some reduction in symptom severity.

¶ 24. Third, Dr. Maskel disagreed that Fowler's score of 26 on the PCL-R can be used to either show significant psychopathy or that it can be predictive of sexually violent recidivism.

¶ 25. Fourth, Dr. Maskel disputed that the RRA-SOR or Static 99 alone or as a basis for SRA can be utilized as a predictive instrument for sexually violent recidivism. Additionally, she maintained that the scores obtained on the testing are too high.

¶ 26. Lastly, Dr. Maskel complained that Fowler's programming has been frequently changed before completion making it difficult for him to fulfill program requirements for a proper assessment.

¶ 27. In summary, Dr. Maskel opined that the diagnosis of Antisocial Personality Disorder did not support the requisite mental disorder under chapter 980 and, as such, Fowler would qualify for a recommendation for discharge.[3]

[3] Dr. Harasymiw concluded that Fowler was not a fit candidate for supervised release; whereas, Dr. Maskel concluded that he was fit for supervised release.

¶ 28. Based on our review of the contents of the re-examining reports, there are not substantial grounds for the exercise of judgment by the trial court to conclude that Fowler is not still a sexually violent person. We thus affirm.

¶ 29. WISCONSIN STAT. § 980.09(2)(a) states: "If the person does not affirmatively waive the right to petition, the court shall set a *probable cause* hearing to determine whether facts exist that warrant a hearing on whether the person *is still a sexually violent person.*" (Emphasis added.) Stated otherwise, is there probable cause that Fowler is not still a sexually violent person? We emphasize that the standard is couched in positive terms.

¶ 30. Dr. Harasymiw's report concludes that Fowler still is a sexually violent person. This was sufficient to support the trial court's conclusion that it was substantially probable that Fowler would engage in acts of sexual violence. Fowler argues that Dr. Maskel's report creates a question of fact sufficient to trigger a discharge hearing, at which the factfinder would decide whether Fowler was or was not a sexually violent person. This court disagrees with Fowler's assessment.

¶ 31. His suggestion ignores the review standards which govern our analysis. Moreover, Dr. Maskel's report did not stand squarely opposed to Dr. Harasymiw's assessment. Although Dr. Maskel disagreed with certain conclusions, she did not recommend *discharge.* Rather, she indicated that given Fowler's improvement with treatment, "supervised release (outpatient) setting, given that there is sufficient structure to the program" would be appropriate.

¶ 32. In *Thiel,* we held that supervision and restrictions were not the appropriate issues to be consid-

ering at the probable cause stage. 275 Wis. 2d 421, ¶ 17. Rather, we concluded that the question at the probable cause stage was black and white: is it substantially probable that the person will engage in acts of sexual violence or is it not. *Id.* Applying this rule to the review standard, we must conclude that the trial court did not err in denying Fowler's request for a discharge hearing. Our review demonstrates that the trial court had "substantial ground for the exercise of judgment" and competent evidence exists in the record for the trial court's decision. Dr. Harasymiw's assessment failed to provide probable cause for this court to conclude that the facts warrant a hearing on whether Fowler is still a sexually violent person. Accordingly, we affirm.

*By the Court.*—Order affirmed.