In re the Commitment of Robert L. Kruse:
State of Wisconsin, Petitioner-Respondent,

v.

Robert L. Kruse, Respondent-Appellant.†

Court of Appeals

*No. 2004AP3081. Submitted on briefs September 15, 2005.
—Decided August 10, 2006.*

2006 WI App 179

(Also reported in 722 N.W.2d 742.)

† Petition to review denied 11/6/06.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Donald T. Lang, Assistant State Public Defender*, Madison.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Juan B. Colas*, asst. attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Lundsten, P.J., Vergeront and Higginbotham, JJ.

¶ 1. VERGERONT, J. Robert L. Kruse, previously committed as a sexually violent person under WIS. STAT. ch. 980, appeals an order denying his petition for discharge. The circuit court held a probable cause hearing under WIS. STAT. § 980.09(2)(a)[1] following a six-month re-examination and concluded there was not probable cause to believe Kruse was no longer a sexually violent person. Kruse argues that the circuit court erred because, in arriving at this conclusion, it weighed the re-examination report that was favorable to him against another re-examination report. Kruse's contention is that the court should have determined only whether there was a plausible account that, if believed, shows there is probable cause to believe he is no longer a sexually violent person and that the re-examination report favorable to him meets this standard. Therefore, according to Kruse, he was entitled to an evidentiary hearing under § 980.09(2)(b).

¶ 2. We agree with Kruse that at a probable cause hearing under WIS. STAT. § 980.09(2)(a), the role of the circuit court is to determine whether there is plausible testimony or evidence that, if believed, would establish probable cause that the petitioner is no longer a sexually violent person. The circuit court erred because it

---

[1] Because the parties agreed to use the standard in WIS. STAT. § 980.01(7) (2001–02) for the re-examination reports and on appeal, in this opinion we refer to the 2001–02 version of the Wisconsin Statutes unless otherwise indicated. We note that 2005 Wis. Act 434, §§ 60–130 effective August 1, 2006, made a number of changes to WIS. STAT. ch. 980 (2003–04), including repealing and recreating WIS. STAT. § 980.09 (2003–04). *See* 2005 Wis. Act 434, § 123. However, 2005 Wis. Act 434 does not apply to this appeal. *See* 2005 Wis. Act 434, § 131.

did not make this determination but instead decided which of the two conflicting reports was more persuasive. However, we also conclude that under *State v. Combs*, 2006 WI App 137, 295 Wis. 2d 457, 720 N.W.2d 684, the re-examination report on which Kruse relies does not establish probable cause because it is not based, even in part, on facts, professional knowledge, or research that was not considered at his commitment trial. Therefore, we affirm.

## BACKGROUND

### I. Initial Commitment Trial

¶ 3. In 1995, Kruse was convicted of first-degree sexual assault in violation of Wis. Stat. § 948.02(1) (1993–94). He was sentenced to an indeterminate term of ten years. Shortly before he was to be released in April 2002, the State filed a petition to commit him as a sexually violent person under Wis. Stat. ch. 980. A sexually violent person under the version of Wis. Stat. § 980.01(7) that applies on this appeal is:[2]

> a person who has been convicted of a sexually violent offense . . . and who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence.

[2] 2003 Wis. Act 187, § 2 changed the definition to a person whose mental disorder makes it "likely," rather than whose mental disorder "makes it substantially probable" that the person will engage in acts of sexual violence. *See* Wis. Stat. § 980.01(7) (2003–04). The State does not object to the use of the "substantial probability" standard on this appeal, but does not concede that it should be used at an evidentiary hearing, should one be ordered, or at future reviews.

¶ 4. At the September 2003 commitment trial to the court, two psychologists, Dr. Debra Anderson and Dr. Patricia Coffey, presented opposing opinions on whether, to a reasonable degree of professional certainty, it was substantially probable, or much more likely than not, that Kruse would commit future acts of sexual violence if released.[3] Dr. Anderson testified that there was a substantial probability that Kruse would reoffend, while Dr. Coffey testified that Kruse was not in the "much-more-likely-than-not range of risk" for reoffending.

¶ 5. Both experts opined that Kruse had a mental disorder within the meaning of WIS. STAT. § 980.01(2) (1999–2000):[4] Dr. Anderson's diagnosis was paraphilia, not otherwise specified,[5] and personality disorder, not otherwise specified; Dr. Coffey's diagnosis was pedophilia, nonexclusive, sexually attracted to females.

¶ 6. In evaluating the likelihood of Kruse engaging in future acts of sexual violence, both Dr. Anderson and Dr. Coffey used actuarial instruments. These are statistics-based instruments created with data obtained

[3] The term "substantially probable" in WIS. STAT. § 980.01(7) (1995–96) was defined in *State v. Curiel*, 227 Wis. 2d 389, 412–13, 597 N.W.2d 697 (1999), to mean "much more likely than not." The supreme court also determined that the legislature intended the phrasings "substantially probable" and "substantial probability" in WIS. STAT. ch. 980 to have the same meaning. *Id.* at 402–03.

[4] WISCONSIN STAT. § 980.01(2) (1999–2000) provides:

"Mental disorder" means a congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence.

The 2001–02 version of this subsection is the same.

[5] Dr. Anderson testified that paraphilia is defined as "recurrent intense sexually arousing fantasies, sexual urges, or behaviors" and differs from pedophilia in that it is not directed specifically toward prepubescent children.

by studying various factors associated with recidivism in groups of people who were convicted of sexual offenses, released, and followed over time. These instruments yield a score for an individual based on prior sex offenses and other historical facts; the scores are associated with a particular percentage of persons who are reconvicted of a sexually violent offense within a particular number of years. Both Dr. Anderson and Dr. Coffey used the Rapid Risk Assessment of Sex Offender Recidivism (RRASOR) and the Static-99. In addition, Dr. Anderson used the Minnesota Sex Offender Screening Tool-Revised (MnSOST-R).[6] Dr. Coffey testified she had stopped using the MnSOST-R because of concerns on the adequacy of cross-validation, while Dr. Anderson was of the view that this instrument had been adequately cross-validated.

¶ 7. Dr. Coffey used, in addition to actuarial instruments, the Hare Psychopathy Checklist Assessment (PCL-R), an instrument used to assess psychopathic personality traits. She concluded Kruse did not have a high degree of psychopathic personality traits and, thus, this instrument did not show an increased risk of reoffending.

¶ 8. Both Dr. Anderson and Dr. Coffey also considered whether and how incidents not considered by the actuarial instruments, as well as Kruse's attitudes, personality features, and behaviors, affected his risk of re-offending. Kruse was almost fifty-five years old at the time, and both experts testified they were aware that age had a potentially modifying effect on recidivism.

---

[6] *See State v. Combs*, 2006 WI App 137, ¶ 4, 295 Wis. 2d 457, 720 N.W.2d 684, for a description of the factors each of these actuarial instruments consider in arriving at a score for an individual.

¶ 9. The scores Dr. Anderson and Dr. Coffey gave Kruse on the RRASOR and the Static-99 were substantially the same.[7] The difference in their conclusions on Kruse's dangerousness stemmed from their different diagnoses of Kruse's mental disorder, from Dr. Anderson's use of the MnSOST-R, and from Dr. Anderson's greater reliance on incidents, attitude, and behavior not taken into account by the actuarial instruments.

¶ 10. Based on the testimony of these experts and the other evidence, the court determined that Kruse was a sexually violent person and committed him to the custody of the Department of Health and Family Services.

## II. 2004 Re-Examination

¶ 11. In March 2004, Dr. Janet Page Hill examined Kruse's records as part of the six-month reexamination required by WIS. STAT. § 980.07(1)[8] and

---

[7] Both gave Kruse a 5 on the Static-99; on the RRASOR, Dr. Anderson gave him a 3 and Dr. Coffey gave him a 4. However, Dr. Coffey noted that she was not confident that a 4 rather than a 3 accurately reflected his risk of reoffending, and she explained why an incident that she viewed as resulting in a 4 rather than a 3 might not actually contribute to increased risk.

[8] WISCONSIN STAT. § 980.07(1) provides:

(1) If a person has been committed under s. 980.06 and has not been discharged under s. 980.09, the department shall conduct an examination of his or her mental condition within 6 months after an initial commitment under s. 980.06 and again thereafter at least once each 12 months for the purpose of determining whether the person has made sufficient progress for the court to consider whether the person should be placed on supervised release or discharged. At the time of a reexamination under this section, the person who has been committed may retain or seek to have the court appoint an examiner as provided under s. 980.03(4).

prepared a report; Kruse declined to be interviewed as part of the re-examination. Dr. Hill gave Kruse a diagnosis of pedophilia, sexually attracted to females, nonexclusive type, and concluded this was a mental disorder within the meaning of WIS. STAT. § 980.01(2). To assess the risk of re-offense, she used actuarial instruments, and based on these, concluded that it was much more likely than not that Kruse would reoffend.[9] Dr. Hill then analyzed certain "dynamic" characteristics, which focus on what relevant changes have occurred with the patient since the last sexual offense, and concluded these did not lower his risk.

¶ 12. Kruse did not affirmatively waive his right to petition for discharge under WIS. STAT. § 980.09(2)(a)[10] and he exercised his right to request

---

[9] The actuarial instruments Dr. Hill used were: the RRA-SOR, the Static-99, and the MnSOST-R. She also used the PCL-R and concluded that this did not show an enhanced risk based on psychopathy.

[10] WISCONSIN STAT. § 980.09(2) provides:

(2) PETITION WITHOUT SECRETARY'S APPROVAL. (a) A person may petition the committing court for discharge from custody or supervision without the secretary's approval. At the time of an examination under s. 980.07(1), the secretary shall provide the committed person with a written notice of the person's right to petition the court for discharge over the secretary's objection. The notice shall contain a waiver of rights. The secretary shall forward the notice and waiver form to the court with the report of the department's examination under s. 980.07. If the person does not affirmatively waive the right to petition, the court shall set a probable cause hearing to determine whether facts exist that warrant a hearing on whether the person is still a sexually violent person. The committed person has a right to have an attorney represent him or her at the probable cause hearing, but the person is not entitled to be present at the probable cause hearing.

(b) If the court determines at the probable cause hearing under par. (a) that probable cause exists to believe that the committed

the court to appoint a qualified professional to examine him. The circuit court appointed Dr. Sheila Fields. Dr. Fields filed a report in August 2004 in which she concluded to a reasonable degree of professional certainty that there was not a substantial probability that Kruse would engage in future acts of sexual violence. She stated: "[t]he best scientific evidence is that Mr. Kruse's risks, while considerable, are somewhat lower than this threshold level."

¶ 13. In preparing her report, Dr. Fields reviewed Kruse's treatment file at the institution where he was confined, his Department of Corrections records, the previous WIS. STAT. ch. 980 examinations, and she interviewed Kruse. Like Dr. Coffey and Dr. Hill, Dr. Fields diagnosed Kruse with pedophilia, sexually attracted to females, non-exclusive, and concluded this was a mental disorder within the meaning of WIS. STAT. § 980.01(2). Also like them, she determined that his degree of psychopathy, as measured on the PCL-R, did not increase his recidivism risks.

---

person is no longer a sexually violent person, then the court shall set a hearing on the issue. At a hearing under this paragraph, the committed person is entitled to be present and to the benefit of the protections afforded to the person under s. 980.03. The district attorney or the department of justice, whichever filed the original petition, shall represent the state at a hearing under this paragraph. The hearing under this paragraph shall be to the court. The state has the right to have the committed person evaluated by experts chosen by the state. At the hearing, the state has the burden of proving by clear and convincing evidence that the committed person is still a sexually violent person.

(c) If the court is satisfied that the state has not met its burden of proof under par. (b), the person shall be discharged from the custody or supervision of the department. If the court is satisfied that the state has met its burden of proof under par. (b), the court may proceed to determine, using the criterion specified in s. 980.08(4), whether to modify the person's existing commitment order by authorizing supervised release.

¶ 14. Like Dr. Anderson, Dr. Coffey, and Dr. Hill, Dr. Fields used the RRASOR and Static-99. She described these as "two of the best validated actuarial scales" and also opined that the statistically based scales, while "hardly infallible," were "far superior to other clinical methods of risk assessment." Dr. Fields scored Kruse at 3 on the RRASOR and 5 on the Static-99, the same scores as Dr. Anderson.

¶ 15. Dr. Fields considered the same "dynamic" characteristics as did Dr. Hill—(illegal sexual interests, attitudes that justified offending, social and emotional functioning, and self-management skills) and, in addition, considered the category of health and age. With respect to Kruse's age, Dr. Fields noted that tentative data suggested that risks for "thrice-convicted sex offenders (like Mr. Kruse) remain high at least through their 50's," but that one of the principal developers of the Static-99 actuarial scale "cautions that the use of such scales is questionable for . . . those approximately 60 and older." As for the other dynamic considerations, Dr. Fields stated that Kruse had not participated in psycho-physiological testing, which would indicate whether his deviant sexual interests had lessened since he began treatment; he "appear[ed]" to be showing increased insight and remorse, which "might reduce recidivism risks"; he exhibited continuing problems of self-management within the institutional setting, although "his behavior with female staff ha[d] seemingly improved over the past year"; and it was unlikely that treatment, still in the early phases, "ha[d] significantly reduced re-offending risks, although Mr. Kruse may well be deriving some marginal benefits thus far."

¶ 16. Because Kruse did not affirmatively waive his right to petition for discharge, the circuit court, as required by Wis. Stat. § 980.09(2)(a), held a probable

cause hearing "to determine whether facts exist that warrant a hearing on whether the person is still a sexually violent person." Section 980.09(2)(a). At the hearing, Kruse, through counsel, argued that the court should consider only the re-examination reports of Dr. Hill and Dr. Fields and should not weigh them against each other but should determine only whether Dr. Fields' report showed there was probable cause to believe that he was no longer a sexually violent person. In Kruse's view it did. The State disagreed, arguing that the court should consider the expert reports presented at the commitment trial to determine if the re-examination reports showed any changes since then.

¶ 17. The court concluded that there was not probable cause to believe that Kruse was no longer a sexually violent person and therefore dismissed the petition. The court explained that it gave Dr. Fields' report "little" weight and found Dr. Hill's report was "much more weighty . . ." and it took into consideration "the history of this case."

## ANALYSIS

¶ 18. On appeal, Kruse argues that the circuit court erred in weighing Dr. Fields' report against Dr. Hill's report and deciding which it found more persuasive. Kruse's position is that the court should have determined only whether there was a plausible basis for believing he was no longer a sexually violent person and, he asserts, Dr. Fields' report meets that standard. The State responds that the circuit court acted properly in weighing the reports of Dr. Fields and Dr. Hill and, even if only Dr. Fields' report were considered, it did not establish probable cause because it showed no change or progress in treatment since Kruse was committed.

¶ 19. There are two distinct issues underlying the parties' arguments. The first is whether the circuit court may, when determining if there is probable cause under Wis. Stat. § 980.09(2)(a), weigh a re-examination report that is favorable to the petitioner against one that is not. This first issue concerns the circuit court's role in assessing the evidence. The second issue is what substantive standard the evidence must meet in order to show probable cause that a person is not "still a sexually violent person" or "no longer a sexually violent person" within the meaning of § 980.09(2)(a) and (b).[11]

I. Circuit Court's Role in Assessing Evidence at a Probable Cause Hearing Under Wis. Stat. § 908.09(2)(a)

¶ 20. Kruse argues that the correct standard for determining probable cause under Wis. Stat. § 980.09(2)(a) is the same as that for determining probable cause at a preliminary examination, or bindover hearing, in a criminal proceeding. The standard for probable cause in a preliminary examination in a criminal proceeding "is satisfied when there exists a believable or plausible account of the defendant's commission of a felony." *State v. Dunn*, 121 Wis. 2d 389, 398, 359 N.W.2d 151 (1984). "[A] preliminary hearing is not a proper forum to choose between conflicting facts or inferences . . . ." *Id.* "If the hearing judge determines after hearing the evidence that a reasonable inference supports the probable cause determination, the judge

---

[11] We consider the phrases "not 'still a sexually violent person' " in Wis. Stat. § 980.09(2)(a) and "no longer a sexually violent person" in § 980.09(2)(b) to have the same meaning in this context, *Combs*, 720 N.W.2d 684, ¶ 21 n.13, and we use them interchangeably in this opinion.

should bind the defendant over for trial." *Id.* Thus, in assessing the witnesses' testimony the circuit court is to "ascertain the plausibility of a witness's story and whether, if believed, it would support a bindover." *State v. Watson,* 227 Wis. 2d 167, 204–05, 595 N.W.2d 403 (1999), citing *Dunn,* 121 Wis. 2d at 397.

¶ 21. The State responds that this is not the correct standard and that, under *State v. Thayer,* 2001 WI App 51, ¶ 28, 241 Wis. 2d 417, 626 N.W.2d 811, the circuit court at a hearing under Wis. Stat. § 980.09(2)(a) must weigh the evidence in order to determine whether there is probable cause. This means, according to the State, that the circuit court must weigh the State's re-examination report and the report prepared at the petitioner's request against each other, just as the circuit court did here.

¶ 22. In his reply brief, Kruse asserts that in *State v. Fowler,* 2005 WI App 41, ¶ 11, 279 Wis. 2d 459, 694 N.W.2d 446, we specifically held that the method for assessing evidence in preliminary examinations in criminal proceedings is applicable to hearings under Wis. Stat. § 980.09(2)(a).[12]

██

¶ 23. The proper role for the circuit court in assessing the evidence at a probable cause hearing under Wis. Stat. § 980.09(2)(a) presents a question of law, which we review de novo. *See Dunn,* 121 Wis. 2d at 393–98 (deciding de novo whether the court at a preliminary examination may choose between competing inferences arising from undisputed historical facts).

---

[12] *State v. Fowler,* 2005 WI App 41, 279 Wis. 2d 459, 694 N.W.2d 446, was released after the circuit court made its decision but before Kruse filed his main brief on appeal. However, Kruse did not mention *Fowler* in his initial brief, and the State did not mention it in its responsive brief.

¶ 24. In *Fowler*, 279 Wis. 2d 459, we considered a challenge to a circuit court's determination at a hearing under WIS. STAT. § 980.09(2)(a) that there was no probable cause. We stated: "We deem the probable cause determination under WIS. STAT. § 980.09(2)(a), to be the same as a probable cause determination in the circumstance of a criminal bindover proceeding and accordingly, subject to the same standards of review." *Id.*, ¶ 11. We did not elaborate on the standard the circuit court uses in determining probable cause in a criminal bindover proceeding, but instead went on to discuss the standard we should apply in reviewing the circuit court's determination. *Id.* However, the role of a circuit court in assessing evidence at a criminal bindover proceeding is well established. *See Dunn*, 121 Wis. 2d at 397–98, quoted above in paragraph 20.

¶ 25. Our conclusion in *Fowler* is consistent with the application of the *Dunn* standard. The report that Fowler asserted established probable cause "did not recommend *discharge*" but, rather, concluded that a form of " 'supervised release' . . . would be appropriate." *Fowler*, 279 Wis. 2d 459, ¶ 31 (emphasis in original). We explained that supervision and restrictions were not the proper issues at a probable cause hearing, which addresses only the question whether there is probable cause to believe it is not substantially probable that the person will engage in acts of sexual violence. *Id.*, ¶ 32, citing *State v. Thiel*, 2004 WI App 140, ¶ 17, 275 Wis. 2d 421, 685 N.W.2d 890. Thus, the re-examination report on which Fowler relied did not show probable cause to believe he was no longer a sexually violent person and did not create a factual dispute that entitled him to an evidentiary hearing. *Fowler*, 279 Wis. 2d 459, ¶¶ 30–32.

¶ 26. The State asserts that in *Thayer* we held that the circuit court must weigh evidence in determin-

ing probable cause at a hearing under Wis. Stat. § 980.09(2)(a), quoting this sentence: "Clearly, some weighing of factual evidence must take place if the court is to determine if some evidence exists sufficient to warrant an evidentiary hearing." 241 Wis. 2d 417, ¶ 28. Read in context, however, this sentence does not support the State's position that at the probable cause hearing the circuit court may decide which of two conflicting re-examination reports is more persuasive.

¶ 27. In *Thayer*, there was only one re-examination report at the probable cause hearing—the report of a staff psychologist for the institution concluding that, while Thayer had made some progress in treatment, he "still present[ed] a substantial risk for further sexual violence." *Id.*, ¶ 24. Thayer argued that he was nonetheless entitled to an evidentiary hearing and the circuit court "usurped the 'function of the fact finder at the full evidentiary hearing under sec. 980.09(2)(b) Stats.' " *Id.*, ¶ 27. We disagreed, stating that Wis. Stat. § 980.09(2)(a) requires that in order to obtain a full evidentiary hearing "a person [must] present some evidence that there is a real question as to whether he or she is still [a sexually violent person]." *Thayer*, 241 Wis. 2d 417, ¶ 28 (citing *State v. Paulick*, 213 Wis. 2d 432, 437 n.2, 570 N.W.2d 626). We then made the statement the State relies on—"[c]learly, some weighing of factual evidence must take place . . . ." *Id.* We concluded that the circuit court had acted properly in reviewing the report before it and determining that it provided no factual basis for probable cause to believe Thayer was a sexually violent person. *Id.*, ¶¶ 28–30. Thus, the "weighing of factual evidence" we were referring to in *Thayer* was an evaluation of the evidence to determine if facts were presented to establish probable cause; we were not addressing whether a court may choose between conflicting reports. Indeed, there was only one report.

146

¶ 28. The other three cases the State cites also do not support its position. Two of the cases, *State v. Schiller*, 2003 WI App 195, 266 Wis. 2d 992, 669 N.W.2d 747, and *Thiel*, 275 Wis. 2d 421, each involved a re-examination report that did not, in itself, provide a basis for probable cause to believe the person was not still sexually violent. In *Schiller*, the re-examination report the petitioner considered favorable to him used an incorrect standard, 266 Wis. 2d 992, ¶¶ 10–16. In *Thiel* (as in *Fowler*, 279 Wis. 2d 459, ¶ 31), the report recommended supervised release, an issue not relevant to the issue at the probable cause hearing. *Thiel*, 275 Wis. 2d 421, ¶ 21. These rulings do not address whether a circuit court may choose between conflicting reports.

¶ 29. The third case, *Watson*, 227 Wis. 2d at 203, held that the circuit court properly decided that an expert's opinion at a preliminary examination in a Wis. Stat. ch. 980 commitment proceeding did not constitute probable cause to the extent that it was based solely on inadmissible hearsay. This holding was based on the role of the circuit court sitting as a fact finder and applying the rules of evidence. *Id.* at 196–203. This holding does not lend support to the State's position that the court may choose between two admissible expert opinions.

¶ 30. We conclude that we are bound by our conclusion in *Fowler* that the probable cause determination under Wis. Stat. § 980.09(2)(a) is the same as the probable cause determination in a preliminary examination in a criminal proceeding. *See Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997). From this it follows that the role of the circuit court is as established in *Dunn*, 121 Wis. 2d at 397–98. That is, in assessing one or more re-examination reports at a hearing under § 980.09(2)(a), the circuit court is to determine whether

147

there is a plausible expert opinion that, if believed, would establish probable cause to believe a person is no longer a sexually violent person within the meaning of the statute. *See id.* If there are two reports with conflicting opinions on this point, the court does not decide which it finds the more persuasive. *Id.*

¶ 31. Even if we were to determine that we did not decide this issue in *Fowler* and we were therefore free to decide the issue anew in this case, we would reach the same conclusion. The purpose of a preliminary examination in a criminal case is to " 'prevent hasty, malicious, improvident and oppressive prosecutions' " and to make sure there is " 'a substantial basis for bringing the prosecution and further denying the accused his right to liberty.' " *Dunn*, 121 Wis. 2d at 395 (citations omitted). The purpose is not to determine whether the defendant is guilty—that is for the fact finder. *Id.* at 396–97. The purpose of a probable cause hearing under WIS. STAT. § 980.09(2)(a) is similar in that it performs a "gatekeeping function" by "provid[ing] an opportunity for the committing court to weed out frivolous petitions by committed persons alleging that they are no longer dangerous and are fit for release." *Paulick*, 213 Wis. 2d at 439. The purpose of the probable cause hearing is to determine if there is an adequate reason for an evidentiary hearing, *see id.* at 437; it is not a substitute for an evidentiary hearing. We also observe that, unlike a preliminary examination, the court at a probable cause hearing under § 980.09(2)(a) does not hear testimony from live witnesses but is presented only with one or more re-examination reports. Thus, the circuit court does not have the benefit of the examination and cross-examination of witnesses that would aid a fact finder in deciding which of two conflicting expert opinions is more persuasive.

148

¶ 32. In this case the circuit court decided which of the two conflicting reports was more persuasive; it did not determine whether there was a plausible expert opinion that, if believed, would establish probable cause to believe a person is no longer a sexually violent person within the meaning of the statute. We conclude this was an error. Dr. Fields' report contained her qualifications and her opinions about Kruse, and the latter was supported with reference to her professional knowledge and experience and information about Kruse she had obtained from identifiable sources. There is no question that her opinions were plausible.

¶ 33. The next step for the circuit court, therefore, should have been to determine whether, if Dr. Fields' opinions were believed, they established probable cause "to believe that [Kruse] is no longer a sexually violent person . . . ." WIS. STAT. § 980.09(2)(b). We turn to that issue now.

II. Whether the Evidence, Properly Assessed, Establishes Probable Cause

¶ 34. Kruse argues that Dr. Fields' report, if believed, establishes probable cause that he is no longer a sexually violent person. The State responds that it does not, because her report does not show any change or progress in treatment, but instead is a relitigation of issues already decided at the commitment trial. In particular, the State argues Dr. Fields' report does not offer a new diagnosis or rely on new facts or new methods of assessment, but instead is essentially the same as Dr. Coffey's testimony, except for Dr. Fields' conclusion that it was "unlikely" that treatment had "significantly reduced reoffending risks." Kruse replies that there is no relitigation because Dr. Fields' report

concerns Kruse's current mental condition and dangerousness, which has not previously been litigated. In addition, Kruse asserts, Dr. Coffey's and Dr. Fields' opinions are not "fungible," because a fact finder might find Dr. Fields to be more persuasive than Dr. Coffey.

¶ 35. We have recently resolved the same issue the parties debate here.[13] In *Combs*, 720 N.W.2d 684, we held that the legislature intended that, in order to provide a basis for probable cause to believe a committed person is no longer sexually violent under WIS. STAT. § 908.09(2), "an expert's opinion must depend upon something more than facts, professional knowledge, or research that was considered by an expert testifying in a prior proceeding that determined the person to be sexually violent." *Id.*, ¶ 32 (footnote omitted). We rejected the proposition that the legislature intended that probable cause may be established by an expert's opinion "without regard to whether that opinion is based on matters that were already considered by experts testifying at the commitment trial or a prior evidentiary hearing." *Id.*

¶ 36. In this case, therefore, we must decide whether Dr. Fields' report shows probable cause under the standard established in *Combs*. This presents a question of law, which we review de novo. *See Fowler*, 279 Wis. 2d 459, ¶ 8.

¶ 37. Kruse does not argue that Dr. Fields' opinion that he is not sexually violent depends on any fact,

---

[13] We certified this issue to the supreme court in *State v. Combs* and *State v. Kruse*, No. 2005AP859, 2005 WL 3434967 (Wis. Ct. App. Dec. 15, 2005). When certification was denied, 289 Wis. 2d 15, 712 N.W.2d 39 (2006), we decided the issue in *Combs*, 720 N.W.2d 684.

professional knowledge, or research that was not already considered by the experts who testified at the commitment hearing. Our own review of the record does not disclose any.

¶ 38. Dr. Fields' diagnosis of Kruse as having "pedophilia, sexually attracted to females, non exclusive" is explained in her report as being based on conduct of Kruse that occurred prior to the commitment trial, and this conduct was considered by the experts testifying at the trial. In assessing Kruse's risk of reoffending, she applied historical facts that existed at the time of the commitment trial to arrive at scores on the RRASOR and Static-99, as did the experts at the commitment hearing. She arrived at the same scores as Dr. Anderson and substantially the same scores as Dr. Coffey. Dr. Fields' report does not indicate that there is any new knowledge on how to score or interpret these instruments or that in scoring or interpreting them she is taking into account any facts not in existence at the commitment trial.

¶ 39. Although Dr. Fields did not use the MnSOST-R, neither did Dr. Coffey; assuming Dr. Fields did not do so because she, like Dr. Coffey, had questions about the cross-validation of that instrument, the competing views on the adequacy of the validation of that instrument were presented at the commitment hearing. Dr. Fields' report does not mention the MnSOST-R and, thus, there is no indication in her report that there is any new knowledge or research on that instrument that might affect an expert's opinion of whether Kruse is now sexually violent.

¶ 40. Dr. Fields' use of the PCL-R to measure psychopathy, which resulted in her eliminating a "magnified recidivism risk" for Kruse, was also used by Dr. Coffey, who reached the same result. There is no

indication in Dr. Fields' report that Kruse's score on the PCL-R was based on any events or information that was not considered at the commitment hearing.

¶ 41. Dr. Fields' report does take into account events and information that occurred since the commitment trial, but her opinion that Kruse is not a sexually violent person does not depend upon them. She expressly states that it is "unlikely" that treatment had "significantly reduced reoffending risks." While she observed that, based on her interview with Kruse, it "appear[ed]" he showed some increased insight and remorse, and his behavior with female staff had "seemingly improved over the past year," she does not indicate that her opinion that he is not a sexually violent person is based in any part on these apparent improvements.

## CONCLUSION

¶ 42. The circuit court erred in weighing the two re-examination reports against each other and deciding which was more persuasive. However, we nonetheless affirm because, applying the proper method of assessing the evidence, Kruse is not entitled to an evidentiary hearing. Although Dr. Fields' opinion that Kruse is not a sexually violent person is plausible, if believed it does not establish probable cause that Kruse is no longer a sexually violent person within the meaning of WIS. STAT. § 980.09(2). Her opinion does not establish probable cause because it does not, as required by *Combs*, depend on any fact or professional knowledge or research that was not considered by experts testifying at the commitment trial.

*By the Court.*—Order affirmed.