COURT OF APPEALS
DECISION
DATED AND FILED

July 1, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1300-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2015CF4511**

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ROBERT C. MCMATH,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: DAVID C. SWANSON and DAVID A. FEISS, Judges. *Affirmed*.

Before Donald, P.J., Geenen, and Colón, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Robert C. McMath appeals from his judgment of conviction for first-degree recklessly endangering safety using a dangerous weapon, endangering safety using a dangerous weapon from a vehicle, and possession of a firearm by a felon. He also appeals from an order denying his postconviction motion, in which he argued that his trial counsel was ineffective for failing to call witnesses to support his alibi. We affirm.[1]

## BACKGROUND

¶2 The charges against McMath stem from a drive-by shooting incident in July 2015 at Milwaukee Auto Glass & Sound. An employee of that shop, Frances,[2] told police that McMath had come to the shop around noon on July 14, 2015, in his gold-colored Chevrolet Impala, complaining that the stereo he had purchased for the vehicle was not working properly. A store invoice from the shop listed McMath as having purchased a stereo for installation in the Impala from Milwaukee Auto on July 3, 2015. McMath told Frances that his friend had tried to fix the stereo and pulled it out of the dash; Frances informed McMath that the warranty for the stereo was therefore null and void. McMath became angry and "caused a scene."

¶3 Frances relented and fixed the stereo. Frances then backed the Impala out of the work bay, and noticed that the backup camera was not working.

---

[1] McMath's trial was before the Honorable David Swanson, whom we refer to as the trial court. McMath's postconviction motion was heard and decided by the Honorable David Feiss, whom we refer to as the postconviction court.

[2] For confidentiality purposes as well as for consistency, we use the pseudonyms for the shop employees utilized by the parties. *See* WIS. STAT. RULE 809.86(4) (2023-24).

All references to the Wisconsin Statutes are to the 2023-24 version.

When he learned the camera was not working, McMath again became angry, yelling and insulting the employees, claiming that the camera had worked previously. McMath was told by employees to leave; he responded, "I'll be back."

¶4 Frances told police that about two hours later, he saw McMath pull into the parking lot next door in the same gold Impala. Frances said McMath then fired three shots out the driver's side window of the vehicle toward the shop. The bullets entered the shop through an open bay door, striking an interior wall. One bullet came within six feet of Frances, but he was not injured.

¶5 Police were able to locate a previous booking photo of McMath which matched the physical description provided by Frances.[3] Officers then checked McMath's residence, where his mother confirmed that he drove a gold car.

¶6 McMath was arrested in October 2015 and charged with first-degree recklessly endangering safety using a dangerous weapon, endangering safety using a dangerous weapon from a vehicle, and possession of a firearm by a felon. The matter proceeded to a bench trial held in October 2016.

¶7 Witnesses for the State included Frances, who testified substantially the same as his statement to police. Another shop employee, Eric, also testified. Eric had completed the invoice when McMath purchased the stereo. Eric

---

[3] Officers presented photo arrays to the shop employees shortly after the shooting, but none of them were able to identify McMath. A second photo array was presented to the employees on August 17, 2015, at which time Frances and two other employees positively identified McMath as the shooter. However, McMath filed a motion to suppress those identifications as unduly suggestive, based on the procedure used in the second photo array. The suppression motion was granted after a hearing before the Honorable Frederick C. Rosa.

remembered that the Impala was a "brownish tan color" with some damage to the fender. Eric identified McMath in court as the man who had purchased the stereo on July 3.

¶8      Eric also saw McMath when he returned to the shop on July 14, and saw that he was driving the same vehicle. He subsequently observed the argument between McMath and other shop employees and heard McMath threaten the employees. Eric stated that he spoke directly to McMath and tried to get him to calm down. During that exchange, McMath said to Eric, "But you understand guns."

¶9      Eric testified that he saw the same Impala with the damaged fender return a couple of hours after that confrontation. He then heard gun shots, and saw the Impala fleeing the scene. Eric stated he did not see who was driving the Impala at that time.

¶10     Also testifying for the State was Ernest, the owner of Milwaukee Auto. Ernest stated that he had been involved in the confrontation with McMath on July 14, when McMath came in complaining about his stereo. Approximately two hours later, Ernest heard shots and saw a tan Impala with a damaged fender fleeing the scene, although he did not see who was driving.

¶11     McMath's defense was that he was never at Milwaukee Auto on July 14. He testified that he had purchased the stereo on July 3 from Milwaukee Auto, but that his cousin had installed it. He further stated that on July l4, he was at the Milwaukee County Courthouse for several hours in the morning filing paperwork regarding the custody of his son. The defense called the mother of McMath's son, Shannon Miller, who testified that McMath had brought that paperwork to her

4

home on the afternoon of July 14. Additionally, McMath's father testified that McMath was at his house around 2:00 p.m. on July 14.

¶12 In delivering its decision, the trial court found that based on the evidence, "the State's version of what happened that day is by far the more persuasive explanation." The court found the testimony of the shop employees to be very credible, observing that they did not "have any motive at all to testify or to falsify their testimony regarding what happened early in the day on [July] 14," and further, that all three witnesses "agree on basically what happened in regards to that confrontation."

¶13 In contrast, the trial court did not find McMath's testimony credible, given the testimony of the shop employees. The court further noted that there was no corroboration of McMath's claim that his cousin had installed the stereo in his car. The court also observed that although the testimony presented by McMath's witnesses helped to establish "part of an alibi," those witnesses did not provide exact times of their interactions with McMath. The court therefore found that "the pieces don't really add up to an alibi." As a result, the court found McMath guilty of all three counts as charged.

¶14 McMath filed a postconviction motion claiming ineffective assistance of his trial counsel, Attorney James Goldmann, for failing to call other witnesses to support his alibi defense. The postconviction court held a **Machner**[4] hearing over several dates in 2023 on those claims.

---

[4] *See* ***State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

¶15    At the *Machner* hearing, testimony was heard from Rhaneshia Allison, who has a son with McMath. Allison testified that she brought her son to the home of McMath's parents on the day of the shooting "[a]round 2:30, 2:45," and that McMath's demeanor was "normal." Allison also testified that she was told by Attorney Goldmann that she would be called as a witness at the trial. She stated that she went to the courthouse during McMath's trial, but was then told by Attorney Goldmann that her testimony was not needed.

¶16    Attorney Goldmann also testified at the *Machner* hearing. He explained that McMath did not have "a perfect alibi" because, based on the evidence, "he physically could have driven [to Milwaukee Auto] and still made it to his parents' house" by the time Allison dropped off her son. Rather, Attorney Goldmann was hoping to create reasonable doubt based on the other testimony relating to McMath's activities on the day of the shooting.

¶17    Attorney Goldmann further stated that he believed Allison should have testified to "add a little more weight" to McMath's timeline of events, but that McMath told him he did not think it was necessary. McMath, however, testified that he never told Attorney Goldmann not to call Allison as a witness. In fact, McMath stated that he considered Allison to be the "primary alibi witness."

¶18    At the end of the hearing, the postconviction court found Allison's testimony to be credible that she was available to testify, and Attorney Goldmann's testimony not credible with regard to his statement that it was McMath's decision not to call her. However, the court stated that Allison's testimony provided merely an "inexact alibi," because her testimony "would not have eliminated or made it impossible for [McMath] to have been in the area of

6

the shooting" shortly before 2:22 p.m.—when the shooting was called in to police—on July 14.

¶19    The postconviction court further emphasized the testimony of the shop employees from Milwaukee Auto, noting that the trial court had found them to be very credible because they "did not have a bias."  The postconviction court further observed that the trial court considered the testimony of those witnesses directly as it was "not even filtered through a jury."

¶20    Given the strength of that evidence, the postconviction court determined that calling Allison as an additional witness "would not have had an impact on the outcome of the trial."  It therefore found that McMath was not prejudiced by Attorney Goldmann's failure to call her, and denied the postconviction motion.[5]  This appeal follows.

### DISCUSSION

¶21    Our analysis of an ineffective assistance of counsel claim involves the familiar two-pronged test: the defendant must show that his trial counsel's performance was deficient and that the deficiency prejudiced the defense. ***Strickland v. Washington***, 466 U.S. 668, 687 (1984).    "The ultimate determination of whether counsel's performance was deficient and prejudicial to

---

[5] In addition to failing to call Allison, McMath argued in his postconviction motion that Attorney Goldmann was also ineffective for failing to call another witness at the trial, Corey Patterson.  Patterson testified at the ***Machner*** hearing that he had installed the stereo in the Impala for McMath on July 3, 2015.  On appeal, however, McMath states that he is not pursuing his claim with regard to Patterson, so we do not discuss this witness further. *See **State v. Schiller***, 2003 WI App 195, ¶6, 266 Wis. 2d 992, 669 N.W.2d 747 (an issue raised but not briefed or argued is deemed abandoned).

the defense are questions of law which this court reviews independently." ***State v. Johnson***, 153 Wis. 2d 121, 128, 449 N.W.2d 845 (1990).

¶22 To prove that counsel was constitutionally deficient, the defendant "must show that counsel's representation fell below an objective standard of reasonableness." ***Strickland***, 466 U.S. at 688. To prove prejudice, the defendant must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." ***Id.*** at 694. The court need not address both prongs of the test if the defendant "cannot make a sufficient showing" on one. ***State v. Mayo***, 2007 WI 78, ¶61, 301 Wis. 2d 642, 734 N.W.2d 115.

¶23 In this case, the postconviction court determined that McMath had not established that he was prejudiced by Attorney Goldmann's failure to call Allison as a witness. This conclusion was primarily based on the strength of the State's evidence; namely, the witnesses from the shop who had contact with McMath, including Frances, who testified that he saw McMath shoot from his vehicle into the shop building. The trial court found these witnesses were "credible and did not have a bias." In fact, the postconviction court noted that the trial court made its credibility findings directly without the testimony being "filtered through a jury." In our review, this court "will not exclude the [trial] court's articulated assessments of credibility and demeanor, unless they are clearly erroneous." ***State v. Carter***, 2010 WI 40, ¶19, 324 Wis. 2d 640, 782 N.W.2d 695. Here, the record supports those findings.

¶24 McMath argues that the failure to call Allison as a witness was prejudicial due to the "highly circumstantial nature" of the State's evidence.

However, circumstantial evidence "is often stronger and more satisfactory than direct evidence," and furthermore, "a finding of guilt may rest entirely on circumstantial evidence." *State v. Searcy*, 2006 WI App 8, ¶22, 288 Wis. 2d 804, 709 N.W.2d 497.

¶25     The postconviction court also emphasized that Allison's testimony would not have eliminated the possibility that McMath had committed the shooting and, as such, it was an "inexact alibi." Therefore, the postconviction court found it "would not have had an impact on the outcome of the trial." This finding aligns with the standard set forth in *Strickland* for determining prejudice. *See id.*, 466 U.S. at 694.

¶26     Nevertheless, McMath argues that he has established prejudice because he is required to "only demonstrate to the court that the outcome is suspect," and that the *Strickland* test is not an "outcome-determinative test," citing *State v. Smith*, 207 Wis. 2d 258, 275-76, 558 N.W.2d 379 (1997). However, the *Smith* court's description of an outcome being "suspect" is simply another way to describe the *Strickland* definition of a "reasonable probability" of a different outcome; that is, whether the alleged deficiency had an impact that undermines confidence in the outcome. *See Strickland*, 466 U.S. at 694. Indeed, the *Smith* court quoted *Strickland* in explaining this premise. *See Smith*, 207 Wis. 2d at 275-76.

¶27     After reviewing the record, including the testimony of the State's witnesses at trial and McMath's alibi witnesses both at the trial and at the *Machner* hearing, we conclude that Allison's additional testimony regarding McMath's activities on the day of the shooting was not sufficient to firmly establish McMath's alibi and overcome the evidence presented by the State. It

therefore would not have impacted the outcome of the trial. As a result, even if Attorney Goldmann was deficient in failing to call Allison as a witness, prejudice has not been established. *See **Strickland***, 466 U.S. at 694.

## CONCLUSION

¶28 Therefore, because McMath has not established prejudice under the ***Strickland*** test, his claim fails. *See **Mayo***, 301 Wis. 2d 642, ¶61. Accordingly, we affirm his judgment of conviction and the order denying his postconviction motion.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.